**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lekeyia GRAHAME, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 2, 2008.

Filed April 18, 2008.

J. Scott O'Keefe, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, KLEIN and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Lekeyia Grahame appeals from the judgment of sentence entered against her following a bench trial on September 29, 2006. Grahame was found guilty of simple possession and possession of drug paraphernalia and was sentenced to 4 years' probation. Grahame argues that the trial court erred in denying her motion to suppress because there was no valid consent to search her pocketbook, and no exigent circumstances existed to justify a warrantless search.[1] After a thorough review of the record, we affirm.

¶ 2 Police officers conducted a consensual search of a house in which an informant had just purchased drugs. During the search, an officer saw the defendant sitting on a couch with a large pocketbook at her feet. Since the experienced officer knew that guns are frequently found in drug houses, she was concerned that there may be a gun in the large pocketbook. While doing a basic check in the main compartment of the pocketbook for a gun, she discovered illegal drugs.

¶ 3 Generally, consent to search a house does not extend to allowing the search of a guest merely sitting in the house. However, there are several distinguishing factors in this case. The defendant had a large bag, easily capable of holding a gun. Also, a few minutes prior to the search the seller emerged from the house after selling drugs to a confidential informant. Drugs and guns frequently go hand in hand. The officer had a right to conduct a minimally intrusive search for weapons in order to protect herself. The dealer could have easily dropped a gun in the large bag on the way out of the house. This is akin to a *Terry*[2] stop, except instead of patting down someone's body to check in pockets, the officer opened and checked a woman's handbag in her immediate control.

¶ 4 A full discussion follows.

FACTS

¶ 5 On November 13, 2005 at approximately 6:00 p.m., Officer Renee Russell observed D.W., a juvenile, enter a home at 126 North Salford Street. On Officer Russell's order, a confidential informant (CI) walked to 126 North Salford Street. D.W. exited the home and spoke with the CI briefly. The informant gave D.W. pre-recorded buy money in exchange for two packets of crack cocaine. The informant returned to another officer, and gave him the drugs; D.W. went into the house. Half an hour later, D.W. walked out of the house and back-up officers arrested him. After a search of D.W., officers found the pre-recorded buy money and two packets of crack cocaine.

---

1. Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002) (citations omitted).

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

¶ 6 Officer Russell knocked on the door of 126 North Salford Street and asked to speak to D.W.'s legal guardian. His mother, Virginia Walker, came to the door. Officer Russell told Ms. Walker that she suspected her son of dealing drugs from the house. Officer Russell asked Ms. Walker to sign a consent form to search the home, believing Ms. Walker had authority to do so. When Officer Russell entered the home she observed Grahame sitting on a couch in the living room with a large pocketbook lying at her feet. From her experience, the officer was concerned that there may be a gun in the pocketbook because guns are frequently found in drug homes. Officer Russell asked Grahame if the bag was hers and Grahame replied that it was. Looking for weapons, Officer Russell opened the large bag. While searching the main portion of the bag, the officer found a clear plastic bag containing marijuana, a brown bag containing $900.00 in cash, and a Ziploc container with new and unused plastic packets.[3] Grahame was charged with possession with intent to deliver, simple possession, possession of drug paraphernalia and criminal conspiracy to commit possession with intent to deliver.

¶ 7 On September 29, 2006, Grahame moved to suppress the evidence found in the pocketbook. After oral argument, the court denied Grahame's motion. After a bench trial, Grahame was convicted of simple possession and possession of drug paraphernalia. On November 9, 2006, Grahame was sentenced to two years' probation on the charge of simple possession and a consecutive two years' probation on the drug paraphernalia charge. Grahame appeals, arguing that the police did not have permission to search the home and there was no reasonable suspicion to search her pocketbook. We disagree and affirm.

¶ 8 Grahame argues that Ms. Walker had no authority to consent to a search of the house and therefore Officer Russell had no right to search the home. "A search warrant is not required if the search has been with voluntary consent." *Commonwealth v. Barnette*, 760 A.2d 1166, 1170 (Pa.Super.2000). Our Supreme Court has stated:

> A third party with apparent authority over the area to be searched may provide police with consent to search. Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises.

*Commonwealth v. Strader*, 593 Pa. 421, 931 A.2d 630, 634 (2007).

¶ 9 Instantly, Officer Russell saw D.W. go in and out of 126 North Salford Street, in the midst of conducting hand-to-hand drug transactions. Also, D.W. remained in the house for about half an hour after the sale of drugs to the CI. When the officer asked to speak to D.W.'s guardian, Ms. Walker identified herself as his mother. Officer Russell asked Ms. Walker to sign a consent to search warrant. Ms. Walker signed the form and invited the officer inside the house. These facts were enough to warrant a reasonable person to believe Ms. Walker had apparent authority to consent to a search of the home. *Strader, supra.*

---

**3.** Grahame does not dispute that the discovery of the drugs was incident to the search for a gun.

¶ 10 Next, Grahame argues that the officer had no reasonable suspicion to search her pocketbook. Specifically, Grahame contends the officer lacked reasonable suspicion where Grahame was not present during the drug transaction. This argument also lacks merit.

¶ 11 In order to search for a weapon a "police officer must have a 'reasonable, articulable suspicion' that criminal activity may be afoot and that the suspect may be armed and dangerous." *In re N.L.*, 739 A.2d 564, 567 (Pa.Super.1999). In *Commonwealth v. Thompson*, 939 A.2d 371 (Pa.Super.2007), this Court determined that an officer's experience and knowledge is an important factor in establishing reasonable suspicion of the existence of a weapon.

> The trial court ... noted the particular relevance of [the defendant] reaching into his pocket when specifically directed by Officer Fones to keep his hands in view, leading Fones to believe [the defendant] may have been reaching for a gun. The trial court found that these facts, **in light of Officer Fones' experience as a narcotics officer,** his knowledge of [the defendant's] prior drug convictions, and **his knowledge that drug dealers often arm themselves,** gave Fones "more than a hunch that the subject was involved in illegal activities." The record supports this finding; Officer Fones did articulate specific facts from which he could reasonably infer that his safety was compromised.

*Id.* (emphasis added).

¶ 12 In *Commonwealth v. Davidson*, 389 Pa.Super. 166, 566 A.2d 897 (1989), this Court held that a search of a person's handbag is justified where the search is designed to discover guns or other weapons. In *Davidson*, officers stopped a car for traffic violations, arrested the driver and found drugs on his person. The defendant was a passenger in the car. The officers volunteered to drive the defendant to the police station because the driver's car had been impounded. During the drive down to the police station the police secured the defendant's purse for their own safety. Once at the station, the defendant asked for the purse back. An officer searched the bag before giving it back to the defendant and found weapons and drugs.

¶ 13 This Court determined that "the sole justification of the search in the present situation is the *protection of the police officer and others nearby*, ... it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other instruments for the assault of the police officer." *Id.* at 899 (citations omitted)(emphasis in original). This Court also recognizes that a pocketbook "is the most likely place for a woman to conceal a weapon." *Id.* Finally, this Court noted that when drugs are involved, "[t]he officer's subsequent actions should be measured against a background that includes the violent nature of narcotic crimes. To substantial dealers in narcotics, firearms are as much tools of the trade as are most commonly recognized articles of narcotic paraphernalia." *Id.* at 900.

¶ 14 We also note that while the Pennsylvania Constitution offers greater privacy rights, it is not unlimited. Our Supreme Court has determined that, "we are to construe the Pennsylvania constitution as providing greater rights to its citizens than the federal constitution 'only where there is a compelling reason to do so.'" *Commonwealth v. Crouse*, 729 A.2d 588 (Pa.Super.1999)(quoting *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 926 (1985)).

¶ 15 The *Crouse* Court held that "[w]here the safety of the arresting offi-

cers can be jeopardized, their safety outweighs the minimal intrusion a properly executed sweep may have upon an individual's privacy. Thus, we see no compelling reason to ... provide greater rights in this context at the expense of the safety of our state law enforcement personnel." *Id.* at 598. Additionally, the Court stated, "[t]o expect the officers to wait for an overt act of hostility before they are allowed to try to neutralize the threat of physical harm is simply unwise especially where they are in a known drug-trafficking location which also happens to be the dealer/arrestee's home turf." *Id.*

¶ 16 Here, Officer Russell had articulable facts that drug activity was taking place inside 126 North Salford Street. Not only was this a potential drug location, but also the dealer's "turf," which a reasonable officer should recognize as a potential threat on their safety as they are entering an adversarial environment. *Crouse, supra.* Officer Russell viewed a large handbag at the feet of Grahame and asked if it belonged to her. She opened the large bag to conduct a basic search for weapons. Grahame presents no evidence that the officer went beyond the minimally intrusive search in an effort to see if there was a gun in Grahame's bag. At the suppression hearing, Officer Russell testified that she felt that a concealed weapon may have been in Grahame's large pocketbook, and may have compromised her safety. She stated she searched the bag "[b]ecause the drugs was [sic] coming out of the property[.] The boy had drugs on him and drugs and guns go hand-in-hand." (N.T. Suppression Hearing, 9/29/06, at 13.) Officer Russell appropriately took steps to neutralize a potentially dangerous situation and therefore, we find she had reasonable

suspicion to search Grahame's pocketbook. *Davidson, supra.*

¶ 17 Judgment of sentence affirmed.

¶ 18 KELLY, J., files a Dissenting Opinion.

DISSENTING OPINION BY KELLY, J.:

¶ 1 I respectfully dissent. The Majority opinion serves to diminish privacy protections long afforded by both the Fourth Amendment of the Constitution of the United States and Article 1, Section 8 of the Constitution of the Commonwealth of Pennsylvania. The Majority opinion cites two bases on which to uphold the trial court's denial of the suppression motion: **first,** that the initial warrantless search of the home was permissible by way of apparent consent, specifically, consent provided when the person who answered Officer Russell's knock on the door to the residence agreed to and signed a consent form;[4] **second,** that the police had reasonable suspicion that officer safety was compromised, thus permitting a protective search of Appellant's purse. However, any authority to authorize a search of the premises is not so broad as to permit the search of personal items belonging to visitors who do not consent. Moreover, the record simply does not support reasonable suspicion here, and I do not agree that the search of Appellant's purse was justified as protective under *Terry.*

¶ 2 The facts of this case are reminiscent of the iconic case of *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra,* upon information that drug transactions were taking place in a particular bar, police obtained a warrant to search both the tavern and a bartender for

---

4. We note that while the Motion Hearing transcript reveals that the consent form was entered into evidence (N.T. Motion, 9/29/06, at 10, 18), the form is not in the certified record.

drugs and related contraband. When the police arrived, they announced their purpose and proceeded to search the patrons of the bar in what they characterized as "a cursory search for weapons." During the search, officers discovered and removed from Ybarra a cigarette pack which contained heroin. The Court held that search was unreasonable on grounds that there was an insufficient link between the patrons of the bar and the known criminal conduct giving rise to the warrant, and that there was no particularized suspicion of the patrons to warrant the searches for weapons:

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. **This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.** The Fourth and Fourteenth Amendments protect the legitimate expectations of privacy of persons, not places.

*Id.* at 91–92, 100 S.Ct. 338 (citations and quotations omitted) (emphasis added). Turning to the question of whether the individual searches were supported by reasonable suspicion of a risk to officer safety, the Court stated:

> The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked,

**even though that person happens to be on premises where an authorized narcotics search is taking place.**

*Id.* at 92–93, 100 S.Ct. 338.

¶ 3 In the present case, an officer observed a youth, D.W., involved in a drug transaction with a confidential informant; D.W. entered and exited the residence that was ultimately searched. When the police approached the house, they received valid consent from someone with apparent authority to authorize a search of the premises. However, as *Ybarra* makes clear, such has constitutional limits.

¶ 4 Instructive in the analysis of the scope of a consent search are cases involving the rights of a passenger in a car that is searched with the permission of the driver. In *Commonwealth v. Viall*, 890 A.2d 419 (Pa.Super.2005), such a search was conducted and drugs were found; the appellant challenged the search on the ground that he had a separate right to privacy. We held that "[w]hile passengers in an automobile may maintain a reasonable expectation of privacy in the contents of luggage they placed inside an automobile, it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." *Id.* at 423 (citations omitted). Thus, consent is only valid in locations to which the consenting party has rightful access; while a vehicle's driver can consent to a search of the passenger compartment, the driver does not have such access to the passenger's luggage or containers and cannot consent to searches of those items.

¶ 5 Similarly here, the consent does not extend to a visitor's belongings.[5] The offi-

---

5. Our Supreme Court has addressed a similar situation in the context of a warrant search. In *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909 (1988), the Court held that a warrant "defines" the scope of a lawful search

"by the **object** of the search and the **places** in which there is probable cause to believe that it may be found." *Id.* at 911 (emphasis in original). The Court then determined that the search of a visitor's jacket found in the resi-

cers ascertained that the purse did not belong to the woman from whom they received consent, but Appellant's permission to search the bag was never sought. In such a situation, the officer could have either asked for and received permission to search the bag, or alternatively, sought a warrant. The authority of police in a search pursuant to consent alone is by nature evanescent—at any moment the consenting party, or any occupant for that matter, may withdraw consent, and unless probable cause arises from an exceptional circumstance, like the identification of contraband in plain view, the police would be obligated to depart. *See Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (police may not continue to search based on one occupant's consent when another present co-occupant refuses).

¶ 6 The government has the burden to show that consent to search is voluntary; in making this showing, the consenting party must be either the defendant or a third party who has authority over the specific place or personal effect to be searched and must have "common authority over or other sufficient relationship to the premises **or effects** sought to be inspected. *U.S. v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (citations and quotations omitted) (emphasis added). "The authority which justifies the third-party consent ... rests ... on mutual use of the property by persons generally having **joint access or control for most purposes.**" *Id.* at note 7 (citations omitted) (emphasis added)."

¶ 7 In the present case, the police officer testified that she asked Appellant if the purse was hers, and that Appellant responded that it was. The officer then immediately searched the bag without asking for permission. Nothing in the record indicates that anyone other than Appellant had any control or domain over the purse.

¶ 8 The Majority also holds that the search of Appellant's purse was permissible because the officer had reasonable suspicion that Appellant had a weapon. The opinion cites *Commonwealth v. Thompson* for this proposition, but the facts in that case are distinguishable from those presented here. In *Thompson,* an officer stopped the appellant's car for a traffic violation, and recognized the appellant, who was driving, as someone with prior drug convictions. Further, the appellant continued to put his hands into his pockets even though the officer repeatedly instructed him to keep his hands in view. Those **articulable specific facts** combined with the officer's particular experience were found by this Court to provide reasonable suspicion, from which the officer could infer that his safety was compromised.

¶ 9 In the present case, the officer performing the search did not know Appellant or have any reason to believe she was involved in illegal drug activity; nor did the officer did not observe any suspicious movements. As noted by the Majority, when asked why she believed the bag might have concealed a weapon, the officer responded only with "[b]ecause the drugs was [sic] coming out of the property? [sic] The boy had drugs on him and drugs and guns go hand in hand." (N.T. Motion, 9/29/06 at 13). This single articulated "fact" does not begin to approach the particularized suspicion articulated by the officer in *Thomson,* and our Supreme Court has held that police experience with narcotics by itself is not enough to show prob-

---

dence, for which the police had a warrant, was lawful. However, in *Reese,* the officer searched the jacket "[w]ithout knowing who the jacket belonged to but suspecting that it may [sic] contain contraband." *Id.* at 910. In the present case there was no warrant.

able cause. *See Commonwealth v. Dunlap*, 941 A.2d 671, 2007 WL 4557837 (Pa. 2007) (holding "the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence."). Thus, the Majority's reliance on *Thompson* is misplaced.

¶ 10 The Majority's reliance on *Commonwealth v. Davidson*, 389 Pa.Super. 166, 566 A.2d 897 (1989), is also misplaced. In *Davidson* we held that the search of the appellant was a valid in light of several facts: Davidson's companion, the driver of the vehicle in which she was a passenger, had a significant amount of money and white powder with him, and while Davidson was being driven to the police station, she reached for her handbag. The officer testified that this made him feel unsafe, and that he told her not to touch it. She ignored him, and when she reached for the bag again he took it from her and placed it between his legs, noting that it felt "very heavy." *Id.* at 898. When they reached the station and Davidson asked for the return of her bag, the officer searched it. The facts of *Davidson* are far more specific than those presented here, and particularized to the appellant and to her handbag: Davidson was a passenger in a car where bags of drugs were found visibly "bulging" from the drivers pockets, she reached for her bag after being told not to, and the officer felt the bag and thought it was unusually heavy. Here, Appellant did not reach for her bag, and the feel or weight of the bag was not apparent to the officer. Thus, *Davidson* does not control.

¶ 11 Accordingly, I would hold that the apparent consent to the search of the house did not extend to a search of Appellant's purse, and that there was not a sufficient showing of reasonable suspicion to permit a protective search. As the search was illegal, I would find that the marijuana, the $900 and the plastic packets were the poisoned fruits of that search, and I would reverse the trial court.

¶ 12 Further, I am compelled to point out that although Appellant has raised the issue of the enhanced privacy protections of Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania, the Majority has failed to perform the analysis required by our Supreme Court in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). This Court recently discussed this analysis, finding that Article I, Section 8 of the Pennsylvania Constitution offers greater privacy protections than the Federal Constitution:

> In determining the scope of protection afforded under Article I, Section 8, the Pennsylvania Supreme Court employs the same two-part test employed by the United States Supreme Court to determine the sweep of the Fourth Amendment of the U.S. Constitution—a test first articulated by Justice Harlan in his concurring opinion in *[Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, (1967) ]*. That test requires a person to (1) have established a subjective expectation of privacy and (2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable and legitimate.

*Commonwealth v. Moore,* 928 A.2d 1092, 1099–1101 (Pa.Super.2007) (some citations and quotation marks omitted).

¶ 13 In light of this analysis, I would find that under the expanded privacy right inherent in Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania, Appellant, as a visitor, had a subjective, legitimate, and reasonable expectation of privacy in her purse. She could have reasonably have expected that the contents of any container she carried would remain private unless and until she provided express permission for an exploration of the contents; a general consent

to search the premises provided by someone who had no right of access to the purse cannot reasonably be extended to it. Thus, even if the Majority's reading of the federal constitutional claim were correct, I would find in addition to the reasons already explained, that because Appellant's state constitutional rights were violated the fruits of the unlawful search should be suppressed.