J-S29008-13

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :    IN THE SUPERIOR COURT OF
                                             :         PENNSYLVANIA

               Appellee       :
                                               :

                   v.             :
                                             :

CARMEN ROSSI,                     :
                                             :

              Appellant      :    No. 739 EDA 2012

Appeal from the Judgment of Sentence February 3, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0001302-2011

BEFORE:  DONOHUE, MUNDY and OLSON, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED NOVEMBER 05, 2014**

Carmen Rossi ("Rossi") appeals from the February 3, 2012 judgment of sentence entered by the Court of Common Pleas, Philadelphia County, following his convictions of possession with intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30), possession of a controlled substance, *id.* at § 780-113(a)(16), possessing an instrument of crime ("PIC"), 18 Pa.C.S.A. § 907(a), and conspiracy to commit PWID, *id.* at § 903(c).  On August 26, 2014, our Supreme Court vacated a prior memorandum decision and remanded to this Court for further consideration in light of ***Commonwealth v. Castro***, 93 A.3d 818 (Pa. 2014).  On remand, we affirm the judgment of sentence.

The trial court summarized the factual history as follows:

> On July 27, 2009, Narcotics Officer Michael Spicer
> ["Officer Spicer"] received information from an

informant about sales of prescription medications occurring at 2329 Hutchinson Street in Philadelphia by a man named Carmen. After setting up surveillance on July 29th, Officer Spicer observed [Rossi] leaving and then returning to that location, a rowhouse, several times, and saw [Rossi], while standing in front of that location, receive an unknown amount of United States currency and hand something small to an unknown male individual. Based upon his experience, the officer believed that he had witnessed a narcotics transaction. N.T. 2.2.2012 at 65, 72-74.

Following that transaction, [Rossi] went back inside 2329 Hutchinson and Christopher Welch [('Welch')], his eventual co-defendant, parked nearby and entered that location as well. Welch, accompanied by a woman who was later identified as a Ms. Celli, was holding a multicolored bag. About ten minutes later, [Rossi] again had a brief interaction with another male in front of the property, exchanging United States currency for a small object. The officer identified this as a narcotics transaction as well. Twenty minutes after that exchange, at approximately 5:10 p.m., Welch, Celli, and a Mr. Bowen walked out of the property together. Welch and Celli returned to their vehicle and Bowen got into another vehicle. Welch drove off, and was followed by Bowen. Officer Spicer notified another police unit that he was going to follow the vehicles. *Id.* at 73-79.

Officer Spicer and other officers apprehended Welch and Bowen in another Philadelphia neighborhood shortly thereafter.[FN2] During his apprehension, Welch ran into an apartment building where he dropped the multicolored bag he had been carrying. Inside the bag, police found 76 Methadose pills, 46 Suboxone pills, another bottle of 60 Suboxone pills, and two bottles of Oxycodone pills containing 50 and 37 pills. Welch himself was carrying $310 in United States currency, keys to an apartment in that building, and a cell phone. During this time,

Sergeant Seaman and Officers Perrotti and Speiser had taken over surveillance of 2329 Hutchinson. *Id.* at 83-86.

After receiving warrants for Welch's apartment and for 2329 Hutchinson, the police conducted searches of both locations that evening. At 2329 Hutchinson, they arrested [Rossi] and found on his person $4,307 in United States currency and a bottle containing 84 Percocet pills. In the basement, they found a safe containing a .9mm Taurus handgun loaded with seventeen rounds, a pill bottle containing 53 Percocet pills prescribed to Mary Bowen, and a life insurance policy in [Rossi]'s name. In the kitchen, police recovered a zip-lock bag containing 145 Oxycontin pills and a bottle containing 93 Hydrocodone pills. From a second floor bedroom, they recovered 121 Vicodin pills, a zip-lock bag with 195 Percocet pills, and another bottle of Percocet containing 100 pills. Police also found mail addressed to [Rossi] and a pocketbook on the first floor with $765 in United States currency. *Id.* at 86-90

At 2401 East York, Welch's apartment, at approximately 9:45 p.m., police found two fifty-gallon trash bags; the first contained a large number of non-narcotic pills. The second contained 18 bottles containing 2,041 Percocet pills, eight bottles containing 1,205 Vicodin pills, three bottles containing 219 Oxycontin pills, one bottle containing 240 Tylenol Four pills, fourteen bottles containing 1,309 Methadose pills, 4 bottles containing 2,143 Xanax pills, five bottles containing 255 Adderall pills, one bottle containing 80 Ritalin pills, [two] bottles containing 153 Dextroamphetamine pills, one bottle containing 100 Codeine, three bottles containing 122 Hydromorphine pills, 12 bottles containing 756 Morphine pills, three bottles containing 250 Clonidin pills, two bottles containing 160 Metadate pills, two bottles containing 152 Methylphentadine or Methylphentadate pills, eleven boxes of Fentanyl patches, two boxes of Daytrana, two pint bottles of

- 3 -

> Hydrocodone liquid, one bottle of Methadone liquid, one pint bottle of Roxicet liquid, and one fluid ounce of Morphine Sulfate. A safe contained $2,480 in United States currency; the apartment also contained paperwork and mail in Welch's name. *Id.* at 90-93.
>
> _____
>
> [FN]2 During this surveillance, Officer Spicer saw that Bowen was wearing a holstered handgun. *Id.* at 81-82.

Trial Court Opinion, 5/2/2012, at 3-5.

The Commonwealth filed criminal charges against Rossi, and at the suppression hearing on February 2, 2012, the Commonwealth offered the testimony of Officer Spicer, Officer Brian Reynolds, and Officer Jeffrey Walker. Officer Spicer testified regarding his observations during his surveillance and searches of 2329 Hutchinson Street and 2401 East York Street. *See* N.T., 2/2/2012, at 64-175. Officer Reynolds testified regarding the contents and recovery of co-defendant Welch's bag at 2401 East York Street. *See id.* at 178-181. Officer Walker testified regarding his involvement in the apprehension and arrest of Welch. *See id.* at 181-202. The trial court denied Rossi's suppression motion, ruling that the search and seizure were proper.

At the outset of the bench trial on February 3, 2012, Rossi agreed to permit the Commonwealth to admit into evidence all relevant, non-hearsay testimony introduced at the suppression hearing. N.T., 2/3/2012, at 13-14.

The trial court convicted Rossi of the above-referenced crimes and imposed an aggregate sentence of seven to fourteen years of incarceration. The trial court denied Rossi's post-sentence motion, after which Rossi filed a timely notice of appeal. On appeal, Rossi raises the following issues for our review and determination:

1. Did the trial court err by denying [Rossi's] motion to suppress?

2. Did the trial court commit an abuse of discretion by denying [Rossi's] motion for extraordinary relief and/or arrest of judgment?

Rossi's Brief at 3.

For his first issue on appeal, Rossi challenges the trial court's denial of his motion to suppress the physical evidence against him. The standard of review of an appeal from a denial of a motion to suppress is as follows:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 227 A.3d 1042, 1045 (Pa. Super. 2011) (quoting *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002) (*en banc*)).

Rossi argues that the trial court erred in failing to suppress the physical evidence obtained from his personal residence at 2329 Hutchinson Street because no probable cause existed to support the issuance of the search warrant. Rossi's Brief at 10. To this end, Rossi relies on two prior decisions of this Court, **Commonwealth v. Kline**, 335 A.2d 361 (Pa. Super. 1975) and **Commonwealth v. Way**, 492 A.2d 1151 (Pa. Super. 1985). In **Kline**, we reversed a trial court's denial of a suppression motion after police obtained a search warrant for the appellant's residence after observing him conduct drug sales on the street. In so doing, we ruled that "[p]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." **Kline**, 335 A.2d at 364. In **Way**, a case involving similar facts, we followed our decision in **Kline**, holding that "the lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid." **Way**, 492 A.2d at 1154.

Rossi contends that "the record is utterly devoid of even [a] scintilla of evidence establishing that [Rossi] had drugs in his residence." Rossi's Brief at 11. Based upon our review of the certified record, we cannot agree. Officer Spicer's testimony established that he observed Rossi engage in narcotics transactions on the street, and that before and after each transaction he saw Rossi going into and out of 2329 Hutchinson Street. This fact supports the existence of a nexus between the street crimes and Rossi's

- 6 -

residence that was lacking in **Kline** and **Way**, and makes those cases inapposite here. In **Commonwealth v. Clark**, 28 A.3d 1284 (Pa. 2011), our Supreme Court specifically instructed that when drug sales involve frequent trips into and out of a residence, probable cause exists to search for drugs in the residence:

> [T[he trial court and Superior Court discounted the common sense import of the fact that after the controlled buy was arranged, the police observed Appellee leave his residence in his vehicle, as precisely described by the CI, drive to a location, conduct the transaction, and immediately return to his residence. This fact certainly connected the illegal transaction to Appellee's residence, in a common sense, non-technical way, and permitted the issuing authority to conclude that drugs would likely be found in the residence. Although the circumstances of the observed transaction also potentially pointed to Appellee's vehicle as a storage location for the drugs, 'the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location.' [**Commonwealth v. Davis**, 595 A.2d 1216, 1222 (Pa. Super. 1991).] Accordingly, the Superior Court's reasoning that perceived no connection between the transaction and the residence was flawed. Under the totality of the circumstances, which permits a balanced assessment of the relative weight of all the various indicia of reliability or unreliability of an informant's tip, there was a sufficient connection between the residence and the transaction to corroborate the CI's information that drugs were stored in the residence, and to support a determination of probable cause to search the residence.

*Id.* at 1291; *see also Davis*, 595 A.2d at 1221 ("[W]ithin the 48–hour period preceding the issuance of the search warrant, the confidential informant witnessed Davis make three drug sales in the William Penn Project, and, within the same time span, Davis was observed ... going to and coming from 408 Pancoast Pl.").

For these reasons, the trial court did not err in refusing to suppress the physical evidence obtained from the search of Rossi's residence at 2319 Hutchinson Street. No relief is due on Rossi's first issue on appeal.

For his second issue on appeal, Rossi argues that the evidence was insufficient to support his convictions for criminal conspiracy and PIC. Rossi's Brief at 16. Our standard of review for a sufficiency of the evidence claim is well established.

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder

> unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Stokes,*** 38 A.3d 846, 853 (Pa. Super. 2011) (citation omitted).

Rossi first challenges the sufficiency of the evidence to support his conspiracy conviction. The Pennsylvania Crimes Code defines conspiracy as follows:

> § 903. Criminal Conspiracy
>
> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A § 903(a). Thus, "'[t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy.'" ***Commonwealth v. Feliciano,*** 67 A.3d 19, 25-26 (Pa. Super. 2013) (*en banc*) (quoting ***Commonwealth v.***

*Devine,* 26 A.3d 1139, 1147 (Pa. Super. 2011)). "'This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.'" *Commonwealth v. McCall,* 911 A.2d 992, 996 (Pa. Super. 2006) (citation omitted). The conspiracy can be proven by circumstantial evidence, such that "[t]he conduct of the parties and the circumstances surrounding such conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Perez,* 931 A.2d 703, 708 (Pa. Super. 2007). Furthermore, "[t]he conspiratorial agreement 'can be inferred from a variety of circumstances, including but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.'" *Feliciano,* 67 A.3d at 26.

Rossi contends that the Commonwealth failed to introduce evidence that showed Rossi entered into an agreement to possess drugs or committed any act in furtherance of the conspiracy. Rossi's Brief at 18. Rossi claims that the record contains no evidence demonstrating "that [he] and his alleged co-conspirators spoke or interacted with one another at any time." *Id.* at 19. Rossi argues that any inference from Welch entering and leaving Rossi's residence is insufficient because it is based on speculation. *Id.* at 20. Furthermore, Rossi asserts that "there was no evidence presented that [he] and Welch or any other person were working in concert pursuant to a joint plan." *Id.* Rossi discounts the evidence that showed he and Welch

were both in possession of similar prescription drugs, stating that all prescription drugs are of pharmaceutical origin and come in no other form. *Id.* According to Rossi, "[a]ll th[e] evidence showed was that Welch entered [Rossi's] residence and that [Welch] emerged [30 minutes] later carrying the same bag he carried into [Rossi's] residence." *Id.*

We must disagree. Our deferential standard of review requires this Court to view the evidence in the light most favorable to the Commonwealth as the verdict winner. *Stokes,* 38 A.3d at 853. Applying this standard here, we must conclude that the Commonwealth's evidence was sufficient to permit the fact-finder to reasonably infer a conspiratorial agreement between Rossi and Welch to distribute prescription drugs. Officer Spicer observed Welch and Ms. Celli enter 2329 Hutchinson Street with a multicolored bag and remain in the residence for about 30 minutes. *Id.* at 73, 75-76. During that time, Rossi exited his residence and engaged in a narcotics transaction in front of 2329 Hutchinson. *Id.* at 75-76. Thereafter, Rossi, Welch, Ms. Celli and Bowen exited Rossi's residence. *Id.* at 75-76. Welch and Ms. Celli returned to the gold vehicle with the multicolored bag, and Bowen got in a burgundy vehicle. *Id.* at 75-76, 83-84. Bowen followed Welch to York and Cedar Streets, which was located in close proximity to Welch's apartment. *Id.* at 78-80, 83-84.

The police soon thereafter discovered that Welch's multicolored bag contained a large quantity of prescription drugs. *Id.* at 84-86. After Officer

Spicer obtained search and seizure warrants, the police searched Rossi's residence and Welch's apartment. *Id.* at 86, 90. Critically, the police recovered, *inter alia*, numerous Oxycontin, Vicodin, and Percocet, from both locations. *Id.* at 87-88, 90-93. From this evidence, the fact-finder could reasonably infer that Welch obtained prescription drugs from his apartment to supply Rossi with the prescription drugs found at Rossi's residence.

Rossi next challenges the sufficiency of the evidence to support his conviction for PIC. To be convicted of PIC, the Commonwealth must prove that the defendant "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Section 907(d) defines an instrument of crime as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d). Possession may be constructive:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.' To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Walker,* 874 A.2d 667, 677-78 (Pa. Super. 2005) (citation omitted).

Rossi points out that the gun was found inside a safe with a bottle of pills prescribed to Mary Bowen, and contends that "because the gun was not easily accessed and was never used or brandished[,] the conclusion that it was an instrument of crime was error because of the absence of proof that appellant had the requisite intent to make out the crime." Rossi's Brief at 21. Even if not easily accessible, used, or brandished, however, Rossi does not deny either his ability to access the gun or his knowledge of the gun's existence. Here, the police discovered the gun, a bottle of Percocet, and a life insurance policy in Rossi's name in a safe located in the basement of Rossi's residence. N.T., 2/2/2012, at 87. Percocet pills were also found in Rossi's bedroom on the second floor of his residence. *Id.* at 87-88. Thus, the finder of fact could reasonably have concluded that the gun was located near the same type of drugs found in Rossi's bedroom and that Rossi could access the gun at will, given that the safe also housed a life insurance policy in his name. Because we must view this evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence presented by the Commonwealth was sufficient to show that Rossi constructively possessed the gun in connection with the prescription drugs in his residence.[1]

_____

[1] We admonish the Commonwealth for citing this Court's decision in **Commonwealth v. Grahame,** 947 A.2d 762, 764 (Pa. Super. 2008) for the validity of the proposition that guns and drugs go hand in hand. Commonwealth's Brief at 10. In **Grahame**, this Court upheld a protective

For these reasons, no relief is due on Rossi's second issue on appeal.

Finally, during the pendency of this direct appeal, Rossi filed with this Court a motion pursuant to Rule 720 of the Pennsylvania Rules of Criminal Procedure requesting a remand to the trial court for a new trial or an evidentiary hearing based on after-discovered evidence. Rossi's motion cites to a December 7, 2012 newspaper article in *The Philadelphia Inquirer* discussing the transfer of certain members of the Philadelphia police department, including Officer Spicer, to lower level positions because the Philadelphia District Attorney's Office had determined that the credibility of the officers had been severely damaged by recent events (including complaints of false arrest, filing fraudulent reports, and the use of excessive force).

---

weapons search of a guest's purse while the guest was in a house being searched by police. *Id.* In so doing, we noted that "drugs and guns frequently go hand in hand." *Id.*

The decision by this Court in *Grahame*, however, was subsequently reversed by our Supreme Court in *Commonwealth v. Grahame,* 607 Pa. 389, 7 A.3d 810 (2010). Therein, the Supreme Court reiterated that "courts cannot abandon the totality-of-the-circumstances test and rely exclusively upon the preconceived notion that certain types of criminals regularly carry weapons." *Id.* at 399, 7 A.3d at 816. In reversing this Court, the Supreme Court pointed out that the Officer admitted that she "conducted a protective search of Appellant's purse based on a generalization that firearms are commonly found in close proximity to illegal drugs" and in the absence of "facts that supported an objectively reasonable belief that Appellant was armed and dangerous, the Superior Court's decision cannot be sustained." *Id.* at 401, 7 A.3d at 817. Thus, the Commonwealth's reliance on this Court's decision in *Grahame* was unquestionably misplaced.

In its recent decision in *Castro*, our Supreme Court ruled that when a motion for a new trial based on after-discovered evidence is filed with this Court, a remand for an evidentiary hearing is appropriate only if said motion references the potential evidence that would be relied upon to support the request, including the "actual testimony, physical evidence, documentation or other type of evidence" demonstrating allegations of police wrongdoing. *Id.* at 827. In this regard, the Supreme Court emphasized that the mere citation to a newspaper article "'pointing to' allegations that if true have the potential to aid [the appellant's] cause" is, without more, insufficient to support a Rule 720 motion. *Id.* at 828.

Here Rossi's Rule 720 motion cites to the above-referenced newspaper article but does not articulate what evidence he would present at the evidentiary hearing on remand. Accordingly, in accordance with *Castro*, Rossi's motion must be denied.[2]

Judgment of sentence affirmed. Motion to remand for evidentiary hearing is denied.

---

[2] Our denial of Rossi's motion does not preclude him from seeking appropriate relief on these grounds pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2014