J-S35005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL GABRIEL RIVERA | : | No. 968 MDA 2021 |

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003629-2020

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: FEBRUARY 8, 2022**

The Commonwealth of Pennsylvania appeals from the June 25, 2021 order granting, in part, and denying, in part, the *omnibus* pre-trial motion filed by Angel Gabriel Rivera. We affirm.

The trial court set forth the following findings of fact:

1. On November 18, 2020[,] at [approximately] 11:00 [a.m.], Officer Rubiel Estevez [("Officer Estevez")], a patrolman with the Wyomissing Police Department,] noticed a silver sedan with an inoperable mirror and [a strap] being used to hold the front driver's side door [closed]. Officer Estevez stated that the driver's side mirror was missing and the passenger[] side mirror was missing the reflective part of the mirror. He also stated that there was a strap holding the driver's side door shut but that the door was not closed all the way.

2. [After initiating a traffic stop,] Officer Estevez approached the driver's side window [and] noticed a lot of movement in the [vehicle]. Officer Christopher Fortin [("Officer Fortin")]

---

[*] Retired Senior Judge assigned to the Superior Court.

of the West Reading Borough Police Department arrived as Officer Estevez was [approaching] the [vehicle]. Officer Estevez stated that because there were four occupants in the vehicle it is protocol to call for back-up. Four officers ultimately arrived on scene shortly after Officer Estevez.

3. Officer Fortin observed [that Rivera], who was seated in the rear passenger[] side [area] of the [vehicle], had a clear plastic bag[,] which contained smaller blue plastic bags[,] in his right pants pocket. Officer Fortin stated he was standing two feet towards the rear bumper on the passenger[] side of the [vehicle]. He testified that he was a couple feet away from [Rivera] when he observed the items in [Rivera's pants] pocket. Officer Fortin stated he believed the bags contained marijuana or synthetic marijuana.

4. Officer Fortin notified Officer Estevez and Criminal Investigator [Kevin] Quinter [("CI Quinter")], of the Wyomissing Borough Police Department['s Criminal Investigation Division], of what he saw in [Rivera's pants] pocket. When Officer Fortin returned to the spot where he originally [observed] the plastic bags, they were no longer in view.

5. CI [] Quinter [] arrived at the scene and approached the driver of the vehicle. Cl Quinter stated that Officer Estevez [informed him] that the driver seemed out of it and nervous. Cl Quinter spoke to the driver and asked her to get out of the [vehicle] but she [was unable to exit the vehicle] because of the broken driver's side door. CI Quinter helped the driver by removing the belt that was holding the door closed so that the door could open and the driver could exit the vehicle.

6. Cl Quinter testified that the driver's pupils were dilated and when she was asked about [the condition of her pupils,] she denied any drug use. CI Quinter asked if there was anything illegal in the vehicle and she said, "no, you can check if you want[."] CI Quinter replied, "Can I search?" [Thereupon,] the driver gave consent to search the vehicle. [The remaining three] occupants of the vehicle were inside of the vehicle when the driver consented to the search.

7. The officers removed the occupants of the [vehicle] prior to searching the [vehicle]. The occupants were seated on the curb and handcuffed. CI Quinter stated that the occupants

were handcuffed once they were removed from the vehicle. Officer Estevez stated the occupants of the vehicle were not free to leave once they were placed on the curb.

8.    CI Quinter testified that two of the occupants of the vehicle had asked for some personal belongings that were inside the [vehicle] while they were handcuffed and seated on the curb[,] and he gave [the occupants the requested] items.

9.    Officer Estevez and Officer [Ryan] Hurlbrink of the Wyomissing Borough Police Department began to search the vehicle after the driver gave the officers consent to do so. Officer Hurlbrink testified that he searched a green backpack that was located in the backseat of the vehicle. Officer Estevez stated that he searched the rear of the [vehicle] and saw a black backpack. He unzipped the black backpack[,] began to search it[,] and saw what he believed to be K2[, also known as synthetic cannabinoid or synthetic marijuana,] and a white powdery substance. The white powdery substance was in a small clear [package, which was located inside] a small pouch. The alleged K2 was in small blue packaging.

10.   Officer Estevez stated that there was a white shopping bag inside the black backpack that contained the blue plastic bags of alleged K2. Officer Estevez could not recall if a wallet was found inside the black backpack. [Officer Estevez also found a white canvas pouch, which he opened. Inside] the pouch [were] multiple bags [containing] a white powdery substance.

11.   Officer Estevez did not ask who owned the black backpack prior to searching it and did not know who owned the black backpack prior to[,] or immediately after[,] searching it. CI Quinter stated that after the black backpack was searched, he asked the driver if it was her [backpack,] and she replied that it was not.

12.   After searching the black backpack, Officer Estevez asked the occupants of the vehicle who [owned] the black backpack. [Rivera] stated that it was his. [Rivera] was not [informed of his **Miranda**[1] rights] prior to being asked about

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

the ownership of the black backpack. After [Rivera] claimed ownership of the black backpack, Officer Estevez stood him up on the curb and began to search his person.

13. [Rivera] was wearing a black hoodie and in the pocket of that hoodie there were small blue bags containing alleged K2[,] which were identical to the blue bags found in the black backpack. [Rivera] was wearing jogger pants under a pair of sweatpants and in the pocket of the jogger pants [] was [$280.00 in United States currency].

14. Following the search of [Rivera's] person, he was placed under arrest and transported to central booking.

15. The driver of the vehicle was not cited for any violations of the [motor] vehicle code and was not arrested for driving under the influence.

Trial Court Statement of Findings of Fact and Conclusions of Law, 6/25/21, at 1-4 (extraneous capitalization omitted).

On November 18, 2020, Rivera was charged with two counts of manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance (one count - synthetic cannabinoids, one count - cocaine) and three counts of possession of a controlled substance (one count - synthetic cannabinoids, one count – cocaine, one count - suboxone).[2] Rivera subsequently filed an *omnibus* pre-trial motion seeking to suppress all evidence obtained from the black backpack, including his statement pertaining to ownership of the backpack, as well as evidence from Rivera's person. Rivera's *Omnibus* Pre-Trial Motion, 1/28/21. Rivera argued that the evidence should be suppressed on the grounds that the police lacked probable cause to

---

[2] 35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

initiate a traffic stop of the vehicle, thereby tainting all evidence obtained from this unlawful traffic stop, or, alternatively, if the police had probable cause to conduct a traffic stop, the police lacked probable cause and exigent circumstances to search the vehicle and, specifically, lacked probable cause or a warrant to search the black backpack. *Id.* at ¶¶7-32. Rivera further asserted that the evidence discovered on his person should be suppressed because the police failed to inform him of his *Miranda* rights prior to subjecting him to police interrogation. *Id.* at 33. After conducting a hearing, the trial court granted the suppression motion, in part, and denied the suppression motion, in part. Trial Court Order, 6/25/21. In particular, the trial court excluded all evidence obtained from Rivera's black backpack and any statements he made concerning ownership of the black backpack but permitted the Commonwealth to introduce, at trial, all evidence obtained from Rivera's person. *Id.*

The Commonwealth filed a notice of appeal wherein it certified that the trial court's order would substantially handicap the prosecution of this case. Commonwealth's Notice of Appeal, 7/23/21; *see also* Pa.R.A.P. 311(d) (stating, "[i]n a criminal case . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the

Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").[3]

The Commonwealth raises the following issue for our review:

Did the [trial] court err by concluding that the driver of the vehicle, who could physically reach and control the black backpack where [Rivera's] items of contraband were found, lacked actual authority [or] apparent authority to grant consent to law enforcement to search the items located within the vehicle?

Commonwealth's Brief at 4 (extraneous capitalization omitted).

The trial court granted Rivera's motion to suppress contraband recovered from his black backpack together with his statement that the black backpack was his, which he uttered at the scene after the search of the black backpack. The trial court denied suppression of contraband recovered from Rivera's person. In ruling on Rivera's motion, the trial court explained,

Although the stop of the vehicle was lawful, the search of the black backpack was not. The search of the vehicle occurred based on the [third-party] driver's consent to search. [The trial] court finds that the driver of the vehicle did not have actual or apparent authority to consent to a search of the [black] backpack found in the backseat next to [Rivera].

The driver did not have actual authority to consent to the search of the [black] backpack because it was not in her control, and she did not have mutual use of or joint access to the zipped [black] backpack in the backseat.

_____

[3] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925. In its Rule 1925(a) statement, the trial court stated it relied upon the rationale as set forth in its statement of findings of fact and conclusions of law that accompanied the suppression order. Trial Court Opinion, 8/3/21, at 2-3.

The driver also did not have apparent authority to consent to a search of the [black] backpack because the facts available to the police at the moment would lead a person of reasonable caution to believe the consenting [driver] did not have authority over the items to be searched. [The trial] court finds that based on the fact that there were four occupants in the vehicle, two backpacks were found in the backseat of the vehicle, and other occupants of the vehicle asked [police] officers for their belongings from inside the vehicle, that it was unreasonable for the [police] officers to believe that the driver had the authority to consent to a search of [the items remaining] inside of the vehicle.

[The trial] court highlights the fact that the driver of the vehicle consented to a search but was not asked if items inside the vehicle belonged to her until after they were searched. The three other occupants of the vehicle remained handcuffed next to the vehicle while it was searched but were not asked about who owned the items found inside the vehicle until after those items were searched. Additionally, the other occupants of the vehicle were not asked to give consent to search any of their belongings located inside of the vehicle prior to the search despite the occupants being present on scene during the search.

As a final point, [the trial] court finds that the statements [Rivera] made on scene shall be suppressed. [Rivera] was deprived of his freedom of action when he was handcuffed upon being removed from the vehicle. Further, as stated above, an "interrogation" occurs when the police "should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." ***Commonwealth v. Clinton***, 905 A.2d 1026, 1030 (Pa. Super. 2006). Here, the [police] officers asked [Rivera] if he owned the black backpack after the [police] officers searched the backpack and found alleged illegal substances in it. The [police] officers knew that the question of who owns the [backpack] would elicit an incriminating response and[,] therefore[, Rivera] should have been [provided his ***Miranda*** rights] prior to being asked if he owned the [black] backpack. [The trial] court notes that, as a practical matter, [Rivera's] statement made with regards to the ownership of the black backpack is moot because the backpack and its contents are also suppressed.

Trial Court Statement of Findings of Fact and Conclusions of Law, 6/25/21, at

9-10 (extraneous capitalization and formatting omitted).

The Commonwealth's challenge to the trial court's suppression ruling turns on two alternate claims asserting that, under the circumstances, the third-party driver possessed either actual or apparent authority to search Rivera's black backpack. Commonwealth's Brief at 10-18. Specifically, the Commonwealth asserts that the search of the black backpack was legally permissible because the driver of the vehicle "had actual authority to consent to the search of the [black] backpack even though it [did not belong to her because she] had general access to all the areas of the [vehicle] and [she possessed] joint access and control over the items directly within her reach in the passenger compartment" of the vehicle, including the black backpack. *Id.* at 13-14. The trial court erred, the Commonwealth argues, in suppressing the evidence discovered incident to the search by consent of the black backpack. *Id.* at 14. Alternatively, the Commonwealth contends that, if the driver of the vehicle did not have actual authority to consent to a search of the black backpack, CI Quinter's reliance on the driver's apparent authority to consent was reasonable based upon a totality of the circumstances. *Id.* at 14-18. The Commonwealth argues that CI Quinter's reliance on the driver's apparent authority to consent to the search was reasonable because the black backpack was located behind the vehicle's center console and within reach of all passengers and because two of the passengers requested, and were provided, items from the vehicle prior to the search but Rivera did not request the black backpack prior to the search, thereby failing to assert ownership and an expectation of privacy in the black backpack. *Id.* at 17.

Our standard of review in addressing a trial court's order granting a

suppression motion is well-settled.

> When the Commonwealth appeals from a suppression order, we
> follow a clearly defined standard of review and consider only the
> evidence from the defendant's witnesses together with the
> evidence of the prosecution that, when read in the context of the
> entire record, remains uncontradicted.  The suppression court's
> findings of fact bind an appellate court if the record supports those
> findings.  The suppression court's conclusions of law, however, are
> not binding on an appellate court, whose duty is to determine if
> the suppression court properly applied the law to the facts.

> Our standard of review is restricted to establishing whether the
> record supports the suppression court's factual findings; however,
> we maintain *de novo* review over the suppression court's legal
> conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-253 (Pa. Super. 2016)

(citations and quotation marks omitted), *appeal denied*, 159 A.3d 933 (Pa.

2016).

The Fourth Amendment to the United States Constitution, made

applicable to the states through the Fourteenth Amendment, and Article I,

Section 8 of the Pennsylvania Constitution protect a person from unreasonable

searches and seizures by police in areas where the person has a reasonable

expectation of privacy.[4]  ***Commonwealth v. Barr***, ___ A.3d ___, 2021 WL

---

[4] The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and particularly

6136363, at *11 (Pa. Filed December 29, 2021). A search is presumptively unreasonable under the state and federal constitutions unless conducted pursuant to a warrant. ***Barr***, 2021 WL 6136363, at *11. "If a person has a reasonable expectation of privacy in a place, then these constitutional provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate." ***Id.*** One exception to the warrant requirement exists when a person with authority over the place to be searched voluntarily consents to the search.[5] ***Commonwealth v. Alexander***, 243 A.3d 177, 193

---

> describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

The Pennsylvania Constitution provides,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA CONST. art. I, § 8.

[5] This Court is cognizant that within the context of automobile searches, the Pennsylvania Constitution provides greater protection than the federal Constitution by requiring a demonstration of both probable cause and exigent circumstances before a warrantless vehicle search is conducted. ***Commonwealth v. Alexander***, 243 A.3d 177, 207 (Pa. 2020) (stating, "[t]his dual requirement of probable cause and exigency is an established part of our state constitutional jurisprudence"). In contrast, the federal

(Pa. 2020) (stating, "[a] citizen is free to put law enforcement to the test by requiring a warrant, and if the citizen wishes to give up that right they can simply consent").

Relative to the case *sub judice*, a "passenger in [a vehicle] does not by his[, or her,] mere presence [in the vehicle] have a legitimate expectation of privacy in the entire passenger compartment of that vehicle" because "it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." ***Commonwealth v. Viall***, 890 A.2d 419, 423 (Pa. Super. 2005). A passenger in a vehicle, such as Rivera, however, maintains a reasonable expectation of privacy in luggage, such as a backpack,[6] that he or she places inside a vehicle provided, however, that the passenger, by his or her conduct, exhibits an actual or subjective expectation of privacy in the backpack as determined by the totality of the circumstances and that expectation is one that society is prepared to recognize as reasonable. ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*) (stating, "[t]he constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting

_____

Constitution permits a warrantless search of a vehicle based upon only a finding of probable cause. ***Id.*** at 182.

[6] An expectation of privacy may exist, if properly established, in any number of containers or vessels that we regularly use to store our personal, private effects. Some common containers include, *inter alia*, luggage, purses, duffel bags, briefcases, and backpacks. ***See Commonwealth v. Perel***, 107 A.3d 185, 190 (Pa. Super. 2014). For ease of discussion in the case *sub judice*, we will refer to such a container as a backpack.

the right but on whether the expectation is reasonable in light of all the surrounding circumstances"). To maintain a subjective expectation of privacy in a backpack, the passenger must take "normal precautions to maintain his[, or her,] privacy." **Commonwealth v. Perel**, 107 A.3d 185, 189-190 (Pa. Super. 2014) (finding that, use of an opaque, zippered backpack to store personal items demonstrates intent to maintain an expectation of privacy and keep the contents of the backpack private).

This Court has long-recognized that "searches of closed containers (*i.e.*, personal luggage) intrude upon protected privacy interests as a matter of law" and the "Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." **Id**. at 189; **see also Viall**, 890 A.2d at 423 (stating, "it would be unreasonable for [a vehicle passenger] to have expected to maintain a privacy interest in objects which were placed inside the [vehicle] and not shielded from the view of the many others occupying the same small space"). Thus, if the passenger maintains an expectation of privacy in a backpack by concealing its contents from view, law enforcement must obtain a warrant before conducting a search of the backpack unless a person with actual or apparent authority to consent to the search of the backpack provides law enforcement with consent to conduct a warrantless search. **See Alexander**, 243 A.3d at 193.

The concept of actual authority to consent "is based upon mutual use of the property rather than a mere property interest." **Commonwealth v. Basking**, 970 A.2d 1181, 1188 (Pa. Super. 2009) (citation omitted). Joint

- 12 -

access and control of another person's backpack, *i.e.*, being able to pick the backpack up or move the backpack, is not akin to having mutual use of the backpack. ***Id.***; ***see also Commonwealth v. Silo***, 389 A.2d 62, 66 (holding that, a nurse may have joint access and control of a patient's clothing but, by virtue of the relationship of the parties, there is no clear right to mutual use of the clothing by the nurse). The ***Basking*** Court provides, by way of example, that while a landlord may have the authority to enter and inspect the lease premise for maintenance reasons, *i.e.*, may have joint access and control to the lease premise, the landlord does not have actual authority to consent to a search of the lease premise because the landlord, typically, does not enjoy mutual use and enjoyment of the lease premise. ***Basking***, 970 A.2d at 1189.

A review of the record in the case *sub judice* demonstrates that on the morning of November 18, 2020, Officer Estevez observed a silver Lexus sedan driving with what appeared to be the driver's side door held shut with a belt or strap. N.T., 5/26/21, at 33. The vehicle was also missing the driver's side rearview mirror unit and the passenger side rearview mirror unit was missing the reflective glass. ***Id.*** at 32-33, 44-49. Officer Estevez initiated a traffic stop of the vehicle and, based upon the number of observed occupants of the vehicle, requested additional assistance from available police officers. ***Id.*** at 34. While Officer Estevez engaged with the driver of the vehicle, Officer Fortin, who was one of the police officers who responded for assistance, observed Rivera in the rear passenger-side area of the vehicle. ***Id.*** at 8. According to

Officer Fortin, Rivera appeared to have a clear plastic bag protruding from his right pants pocket and in that clear plastic bag were numerous blue "baggies" containing what Officer Fortin believed, based upon his narcotics training, to be marijuana or synthetic marijuana. *Id.* 8-10. Officer Fortin informed both Officer Estevez and CI Quinter, who also arrived on the scene as a responding police officer, of his observations. *Id.* at 8, 34-35, 52, 63-64. CI Quinter, upon approaching Officer Estevez, was informed by Officer Estevez that the driver "seemed like she was out of it, very nervous, [like] something was going on." *Id.* at 64. CI Quinter asked the driver to step out of the vehicle and assisted her with removing the strap so the driver's side door could be opened. *Id.* CI Quinter observed that the driver's pupils were dilated and, based upon his training as a certified drug recognition expert, he believed the driver may have ingested an illegal stimulant. *Id.* at 65. CI Quinter asked the driver if there were any illegal drugs in the vehicle, to which the driver responded in the negative. *Id.* CI Quinter asked the driver for consent to search the vehicle, and the driver gave CI Quinter her consent to search the vehicle. *Id.* Officer Estevez also testified that he overheard the driver telling CI Quinter that it was "okay" to search the vehicle. *Id.* at 36, 72.

After receiving the driver's consent to search the vehicle, the remaining three occupants of the vehicle, including Rivera, were removed from the vehicle. *Id.* at 11, 36, 66. The three passengers, after being removed from the vehicle, were handcuffed, and told to sit on the curb near the vehicle. *Id.*

at 18, 53, 75-76. The driver remained standing near CI Quinter as he searched the front driver's side portion of the vehicle. *Id.* at 66.

After being removed from the vehicle and handcuffed, but prior to the police officers beginning the search of the vehicle, two of the passengers, neither of whom were Rivera, requested personal items from the vehicle. *Id.* at 66. One passenger was given a jacket and the other passenger was provided an "item" that was not identified during the testimony at the suppression hearing. *Id.*

Officer Estevez, upon conducting a search of the rear passenger area of the vehicle, stated that he discovered a black backpack "in the center on the rear hump [area of the vehicle]." *Id.* at 38. Officer Estevez described the location of the black backpack, upon discovery, as follows:

> So it was in the rear – in the middle hump so in the rear part of the [vehicle] in between where the passengers would sit, in that little hump there. Pretty much the middle where anyone can reach and just grab hold of the backpack.

*Id.* at 38. Officer Estevez stated that the backpack was black in color, opaque, and made of canvas. *Id.* at 54. He also testified that there were no marks or tags on the outside of the backpack indicating ownership. *Id.* Officer Estevez stated that he had to unzip the backpack in order to access the contents of the black backpack. *Id.* at 54-55. Prior to unzipping the black backpack, Officer Estevez stated that he did not ask the driver if the backpack belonged to her, and he was unaware that any police officer inquired of the other occupants as to the ownership of the black backpack. *Id.* at 55. Upon

unzipping the black backpack, Officer Estevez stated he found a small white plastic "shopping bag" that contained "small blue baggies" with what appeared to hold synthetic marijuana. *Id.* Officer Estevez stated he was uncertain whether he had to manipulate the white plastic bag in any way in order to discover its contents. *Id.* at 55-56. When asked if he found a wallet containing identification in the black backpack, Officer Estevez stated, "I think I might have found a wallet[,] but I don't remember." *Id.* at 56. CI Quinter, however, testified that when he subsequently photographed the contents of the black backpack, the contents included identification belonging to Rivera. *Id.* at 74. Officer Estevez testified that he also found a black and white canvas pouch inside the black backpack. *Id.* at 56. Upon physically opening the canvas pouch, Officer Estevez stated the pouch contained multiple bags of a "white powdery substance." *Id.* at 56-57.

After concluding his search of the black backpack, Officer Estevez stated that he asked the occupants of the vehicle who owned the black backpack. *Id.* at 41, 59. Just prior to Officer Estevez asking the occupants of the vehicle about the ownership of the black backpack, the occupants were sitting handcuffed on the curb. *Id.* at 57-58. Officer Estevez stated that the occupants, at that point, were not free to leave the scene. *Id.* Officer Estevez recalled that at least four police officers, including himself, were in the immediate vicinity of the occupants and the red and blue lights on the police cruisers were still flashing. *Id.* at 58-59. Officer Estevez also stated that prior to asking the occupants, and in particular Rivera, about ownership of the black

backpack, he did not inform Rivera of his *Miranda* rights. *Id.* at 58, 68. Upon Officer Estevez's inquiry, Rivera stated that he owned the black backpack. *Id.* at 41, 59, 68. Thereafter, Officer Estevez searched Rivera's person and discovered "more of" the small blue "baggies" containing the suspected synthetic marijuana in the front pockets of the black "hoodie" Rivera was wearing. *Id.* at 42. Officer Estevez stated that he also discovered $281.00 in United States currency in the pocket of the jogger pants Rivera was wearing underneath his outer pants. *Id.* at 43.

Based upon a review of the record, we concur with the trial court that the third-party driver lacked actual authority to consent to the search of the black backpack. *See* Trial Court Statement of Findings of Fact and Conclusions of Law, 6/25/21, at ¶¶22-23. The trial court found, and the record supports, that the black backpack was opaque, closed with a zipper, and located in the rear passenger compartment of the vehicle in an area next to Rivera. Because of its opaque covering and closed-zipper features, we agree with the trial court that Rivera possessed a constitutionally protected expectation of privacy in the black backpack. Moreover, assuming, *arguendo*, that the driver had joint access and control of the black backpack, *i.e.*, the driver had the ability to pick the black backpack up or remove it from the vehicle, there is no evidence the driver possessed a right to mutual use of the black backpack. Therefore, we discern no error of law or abuse of discretion in the trial court's determination that the third-party driver lacked actual authority to consent to the warrantless search of the black backpack.

Concerning apparent authority to consent, our Supreme Court in
***Commonwealth v. Strader***, 931 A.2d 630 (Pa. 2007) described the apparent
authority exception to the Fourth Amendment's warrant requirement as
follows:

> A third party with apparent authority over the area to be searched
> may provide police with consent to search. Third[-]party consent
> is valid when police reasonably believe a third party has authority
> to consent. Specifically, the apparent authority exception turns
> on whether the facts available to police at the moment would lead
> a person of reasonable caution to believe the consenting third
> party had authority over the premises. If the person asserting
> authority to consent did not have such authority, that mistake is
> constitutionally excusable if police reasonably believed the
> consenter had such authority and police acted "on facts leading
> sensibly to their conclusions of probability."

***Strader***, 931 A.2d at 634 (citations omitted). The reasonableness of the
police officer's belief that the third party had the authority to consent to the
warrantless search is "judged from an objective standard based on the totality
of the circumstances." ***Basking***, 970 A.2d at 1190. "In ambiguous situations,
those situations which would cause a reasonable person to question the
consenting party's actual authority or if the consenting party's assertions of
authority appear unreasonable, a police officer should make further inquiries
to determine the status of the consenting party. Reliance on a third party's
bald assertion in such situations could subject any search to the remedy of
the exclusionary rule." ***Id.*** at 1191.

Here, the trial court found, and the record supports, that "there were
four occupants in the vehicle, two backpacks were found in the backseat of

- 18 -

the vehicle, and [two] other occupants of the vehicle asked [police] officers for their belongings [that were located] inside the vehicle." Trial Court Statement of Findings of Fact and Conclusions of Law, 6/25/21, at ¶24. We concur with the trial court that "it was unreasonable for the [police] officers to believe that the [third-party] driver had the authority to consent to a search of everything inside [] the vehicle." *See id.* The officers' testimony showed that the driver gave consent to search the car but did not specify the contents of the vehicle. The record demonstrates it was only after CI Quinter asked the third-party driver for consent to search the vehicle, and consent was provided, that the other occupants, including Rivera, were removed from the vehicle and placed on the adjacent curb. Two of the occupants then asked for, and were provided, items from the vehicle, which indicated that not all the items located in the vehicle belonged to the driver. Moreover, by providing the items to the two occupants, the police officers were cognizant that not all the items in the vehicle belonged to the driver. Under these circumstances, a reasonable person would have cause to question who owned the remaining items in the car and whether the driver had the authority to consent to a warrantless search of these remaining items. It would be unreasonable, from the perspective of a reasonably cautious person, for the police officers to infer, in this situation, that the driver's authority to give consent extended beyond the common areas of the interior compartment of the vehicle to include a warrantless search of the remaining, unclaimed items, including the black backpack, in the vehicle. Because ownership (and the right of mutual use) of

the remaining items was ambiguous, the police officers were required to make further inquiry as to the ownership of the black backpack and obtain consent, if provided, from its owner prior to conducting a warrantless search. The police officers, in this instance, conducted the search of the black backpack before asking this single question as to ownership. Consequently, we discern no error of law or abuse of discretion in the trial court's determination that the driver's apparent authority to consent was invalid.

In sum, we discern no error of law or abuse of discretion by the trial court in its suppression of the contents of the black backpack on the basis that the third-party driver lacked actual or apparent authority to consent to the warrantless search of the black backpack.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/08/2022