931 A.2d 630

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Vincent Jvanna STRADER, a/k/a Vincent
Juanno Stradler, Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 2007.

Decided Sept. 26, 2007.

422

Kirk James Henderson, Pittsburgh, for Vincent Jvanna Strader, Appellant.

Francesco Lino Nepa, for the Com. of PA, Appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

424

## *OPINION*

Justice EAKIN.

Agent Wolfe, a state parole officer, received a tip that Cecil Shields, a parole absconder subject to an active warrant, was residing at 400 Swissvale Avenue, Apartment 15, Wilkinsburg, Pennsylvania. Agent Wolfe conveyed the tip to Detective Knox of the Wilkinsburg Police Department, who, along with other officers, went to the apartment in search of Shields. Detective Knox knew from prior contacts that appellant was the leaseholder of the apartment.

Detective Knox knocked on the apartment door. A man who identified himself as Thornton answered the door. Detective Knox showed Thornton a wanted poster of Shields and asked Thornton whether he knew him; Thornton responded he did not. Detective Knox asked Thornton whether appellant was in the apartment, and Thornton said "no, he would be back shortly." N.T. Suppression Hearing, 6/30/04, at 62. Thornton stated he was there temporarily, and he and another man in the apartment had been there for about a day. Detective Knox asked Thornton whether he was in charge of the apartment. Thornton responded, "yes." *Id.*, at 8. Detective Knox asked Thornton for permission to search the apartment for Shields; Thornton consented.

Detective Knox and his partner entered the apartment. In the living room, Detective Knox observed one or two plastic baggies containing a light brown substance. Believing it to be heroin, Detective Knox seized it. Meanwhile, Detective Knox's partner found a digital scale in the kitchen sink with white residue on it, which Detective Knox also seized. Detective Knox returned to his vehicle, where he tested the baggies and scale for the presence of heroin. Based on the positive results he obtained, Detective Knox secured a search warrant for the apartment, which yielded cocaine, more heroin, a handgun, and more items associated with packaging drugs.

Consequently, appellant was arrested and charged with possession with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, and person not to

possess a firearm. Appellant filed a motion to suppress the items seized from his apartment at the time of his warrantless arrest, which the trial court denied, concluding Thornton had apparent authority to consent to the search. Trial Court Opinion, 6/6/05, at 2–3. The trial court granted a motion to sever the firearm charge before trial. A jury convicted appellant of all the drug-related charges.

The Superior Court affirmed, holding the police officers reasonably believed Thornton had valid authority to consent to the search. *Commonwealth v. Strader*, No. 1769 WDA 2004, 905 A.2d 1049, unpublished memorandum at 9 (Pa.Super.2006). Analogizing the facts to those in *Commonwealth v. Hughes*, 575 Pa. 447, 836 A.2d 893 (2003) (Opinion Announcing the Judgment of the Court), the majority determined the officers' belief was reasonable in light of "Thornton's apparent control of the apartment as demonstrated when he answered the door and asserted that he was in charge while [appellant] was gone." *Strader*, at 9.

Judge Klein dissented; he distinguished *Hughes*, stating "[t]he critical fact in *Hughes*, not present in this case, was that the residence being searched was that of a parolee who had given previous consent to any search by parole officers." *Id.*, at 1 (Klein, J., dissenting). Judge Klein opined Thornton's telling the police he was responsible for the apartment until appellant returned was not dispositive of the issue, noting there are varying degrees of responsibility, and a temporary houseguest may simply be responsible "to close the windows when it starts to rain or to use a plunger on a stopped up sink." *Id.*, at 8. Therefore, Judge Klein would have reversed the judgment of sentence and ordered the evidence suppressed.

We granted allowance of appeal to resolve the issue, as appellant framed it:

Can the police reasonably believe that a person answering a door has the authority to allow them to enter when they know for a fact who lives in the apartment, when they know for a fact that no one present in the apartment lives there,

when they know for a fact that the people present only recently arrived at the apartment, and when they know for a fact the legal tenant is expected back shortly[?]

Petition for Allowance of Appeal, at 4.

 When reviewing suppression motions, we are bound by the suppression court's factual findings that the record supports, but we are not bound by the suppression court's conclusions of law. *Commonwealth v. Gaul,* 590 Pa. 175, 912 A.2d 252, 254 (2006). Thus, we are only to determine whether the suppression court properly applied the law to the facts. *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998). Since the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of appellant's evidence "as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (2003).

Appellant argues since police knew he lived in the apartment, Thornton did not live there and only recently arrived, and because appellant was due back shortly, police did not act reasonably in accepting Thornton's consent to search the apartment. More specifically, appellant argues "[i]f the surrounding circumstances indicate . . . the person giving consent does not actually live there, . . . police may not accept an invitation to enter." Appellant's Brief, at 9. Appellant also argues police acted "more unreasonably than . . . police in *Hughes.*" *Id.,* at 10. Appellant does not argue the Pennsylvania Constitution grants him greater protection than the Fourth Amendment to United States Constitution, nor does he cite the factors set forth in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), which assist this Court in determining if such greater protection exists. Thus, we review this case under the Fourth Amendment [1] only.

1. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

The Commonwealth argues there was sufficient reason to conclude Thornton had actual and apparent authority to consent to the search. The Commonwealth points to Thornton's statement that he was in charge of the apartment, and no testimony at the suppression hearing contradicted this statement; Detective Knox was the only witness at the suppression hearing. Thus, the Commonwealth argues it satisfied its burden of showing Thornton had authority to consent to the search.

■■ The Fourth Amendment protects the people from unreasonable searches and seizures. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. *Horton v. California*, 496 U.S. 128, 134 n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citations omitted). One such exception is a consensual search, which a third party can provide to police, *Hughes*, at 900, known as the apparent authority exception.

■■ A third party with apparent authority over the area to be searched may provide police with consent to search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Third party consent is valid when police reasonably believe a third party has authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. *Id.* (citations omitted). If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted "on facts leading sensibly to their conclusions of probability." *Id.*, at 186, 110 S.Ct. 2793

particularly describing the place to be searched, and the persons or things to be seized.").

(quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

In *Hughes*, police officers went to a suspected parole violator's residence, and on the front porch of the house found several teenage girls. Police asked the girls whether Hughes was home; the girls responded he was not. One officer asked for permission to enter the house to look for Hughes; the girls consented and opened the door. Upon entry, the officers found evidence of various drug offenses. At trial, Hughes moved to suppress this evidence, but the trial court admitted it, and the Superior Court affirmed. *Hughes*, at 896–98.

Before this Court, three Justices agreed "[t]he actions of the girls provided the officers with the reasonable belief that the girls possessed common authority over the premises permitting them to provide valid consent to enter the residence." *Hughes*, at 901. Two Justices disagreed, but concurred in the result in light of the reduced privacy expectation of Hughes as a parolee pursuant to the parole exception to the warrant requirement. *Id.*, at 905 (Saylor, J., concurring); *id.*, at 906 (Lamb, J., concurring). Two Justices dissented, opining the apparent authority exception was not made out. *Id.*, at 906–08 (Cappy, C.J., dissenting, joined by Nigro, J.). Although none of the three conclusions we reached in *Hughes* garnered a majority, all recognized the apparent authority exception; our disagreement concerned the application of the exception to the facts.

Here, we initially affirm *Hughes'* recognition of an apparent authority exception as the United States Supreme Court has clearly held there is an apparent authority exception to the warrant requirement under the Fourth Amendment. We also affirm the finding below that police reasonably believed Thornton had authority to consent to the search. Police spoke with Thornton, an adult, who obviously was inside the apartment they sought to search; in *Hughes*, police asked girls sitting outside the residence if they could enter after the girls said Hughes was not home. Here, police did not immediately ask Thornton if they could enter; instead, they spoke

with him and determined appellant was not present. Before police sought permission to enter the apartment, they asked Thornton whether he had authority to control who entered the apartment. Once Thornton indicated he was in control, police asked him, as an occupant who expressly claimed authority to control the apartment, whether they could enter. The fact police knew appellant was likely to return soon is significantly less important here; police were searching for Shields as a fugitive, making time of the essence so that police could capture Shields and protect the public.

 As Judge Klein notes, people in another's home may or may not have much authority, for homeowners may or may not spell out for guests or people happening to be in their home exactly what authority they have. However, the question is what is apparent, not actual, and the reasonableness of the police belief in that apparent authority. From the perspective of police at the time of the encounter here, it was reasonable to conclude Thornton had the authority to control who entered the apartment. Thornton said he was in charge and he let police in. The totality of circumstances in each case controls whether police have a reasonable belief the person consenting to the search has authority to do so. We decline to adopt Judge Klein's reasoning, which would require proof of actual authority, which is not the rule the United States Supreme Court has established.

 We also note it is more reasonable for police to believe the person has the authority to grant consent to search for a fugitive; they did not seek to search through the homeowner's private papers and other materials. As with any suppression claim, it is the information known at the time, not that learned after the fact, that controls the legal analysis. A search for a fugitive is generally short in duration, as it is hard to hide a person from view, particularly inside a smaller residence like an apartment. Entry here did not involve a search for drugs, even though probable cause for drugs became apparent after entry.

Based on the foregoing, we hold there is an apparent authority exception to the warrant requirement under the Fourth Amendment, and police here had a reasonable belief Thornton had authority to consent to the search.

Order affirmed. Jurisdiction relinquished.

Chief Justice CAPPY and Justice CASTILLE and SAYLOR join the opinion.

Justice BALDWIN files a dissenting opinion in which Justice BAER joins.

Justice BALDWIN, dissenting.

To the extent that the majority recognizes the apparent authority doctrine as a viable exception to the Fourth Amendment, I agree. The critical inquiry in this case, therefore, should simply be one into the reasonableness of the police's belief that the individual named Thornton had the apparent authority to consent to a search of Appellant's home. Based on all of the facts in this case, in my view, this belief cannot fairly be characterized as reasonable. The majority finds otherwise, and I am compelled to dissent.

In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the United States Supreme Court found that the Fourth Amendment is not violated where a third party consents to the search of a residence over which he or she has common authority. In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Court addressed the question left open by *Matlock,* "[w]hether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Rodriguez,* 497 U.S. at 179, 110 S.Ct. at 2793. In an opinion by Justice Scalia, the Court held that the relevant inquiry under the Fourth Amendment is whether the officer's judgment, whether factually accurate or not, is reasonable. *Id.* at 185, 110 S.Ct. at 2800.

In *Rodriguez,* police officers were dispatched to a residence where they found the victim to be severely beaten. *Id.* at 179, 110 S.Ct. at 2796. She told the police that the Respondent, Edward Rodriguez, was the culprit. The victim agreed to take the police to Rodriguez's residence, where he was supposedly sleeping. *Id.* at 179, 110 S.Ct. at 2797. The victim had a key to the residence and repeatedly referred to the residence as "our" apartment. She also informed the officers that she had clothes and furniture there. The record was unclear as to whether she claimed that she currently lived there, or that she used to live there. *Id.* Nevertheless, the victim let them into the apartment with a key that she had and gave the officers permission to enter. *Id.* at 180, 110 S.Ct. at 2797. While inside, the officers found a large quantity of narcotics and related paraphernalia. As it turned out, however, she no longer lived there and had no actual authority to consent to entry into Rodriguez's home. *Id.*

The Court first found that the State had failed to prove that the victim had the actual authority to consent to police entry. Thus, *Matlock* was facially inapplicable to the case. *Rodriguez,* at 181–82, 110 S.Ct. at 2797–98. The Court then proceeded to address whether the Fourth Amendment prohibits searches where the police reasonably believed, at the time of entry, that the consenting party had the requisite authority, when it later turns out that the police's judgment was factually incorrect.

The Court initially rejected Rodriguez's argument that permitting a reasonable belief in common authority would result in a vicarious waiver of a person's Fourth Amendment rights. Justice Scalia drew a distinction between rights that protect a fair criminal trial, i.e., those rights which require a knowing and intelligent waiver, and those rights guaranteed under the Fourth Amendment, which the Court held requires no such waiver. Indeed, the Court stated that "[w]hat [a person] is assured by the Fourth Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no search will occur that is 'unreasonable.'" *Id.* at 183, 110 S.Ct. at 2799. Accordingly, the Court held that

reasonableness does not necessarily require the government to be factually correct. "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* at 186, 110 S.Ct. at 2800 (citing *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

In parting, the Court noted that its holding is not unlimited and that a police officer cannot always accept an invitation into someone else's home. The Court stated:

> Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" If not, then warrantless entry without further inquiry is unlawful unless actual authority exists. But if so, the search is valid.

*Id.* at 188–89, 110 S.Ct. at 2801 (citations omitted). Despite this directive from the Court, the majority in the instant matter reaches the conclusion that the police officers' judgment that Thornton had the authority to consent to police entry into Appellant's home was reasonable, relying primarily and nearly exclusively on Thornton's unsubstantiated statement that he was in control of the apartment at the time. This bare assertion cannot justify the police entry in this case, particularly where all other relevant facts militate towards the conclusion that either Thornton did not have the authority to consent to a search or, at minimum, further inquiry was necessary under the *Rodriguez* analysis.

The facts of the instant case demonstrate, as Justice Scalia envisioned, a situation where a reasonable person would con-

clude that Thornton had no authority to consent. A review of these facts demonstrates this point.

Timothy Wolfe, an agent with the Pennsylvania Board of Probation and Parole, received anonymous information that Cecil Shields, a parole violator, was staying at 400 Swissvale Avenue, Apartment 15, in Wilkinsburg, Pennsylvania. Wolfe contacted Detective Knox of the Wilkinsburg Police Department and requested that he check the apartment for Shields. *Commonwealth v. Strader*, 905 A.2d 1049, slip op. at 2 (Pa.Super.Ct.2006).

Knox, along with other Wilkinsburg officers, went to the residence and knocked on the door. Based on previous contacts, Detective Knox knew that Appellant, Vincent Strader, resided at this address. However, a man named Thornton answered the door and Appellant was not present in the residence at the time. There was also another unidentified man in the apartment. *Id.* Detective Knox showed Thornton a poster of Shields and asked if he knew him and whether he was in the apartment. Thornton responded "no" to each question. *Id.*

Thornton informed Detective Knox that he had only been there for about a day after arriving from Tennessee. He further indicated that the unidentified man arrived shortly before the police arrived. Detective Knox then asked Thornton if he was in charge of the apartment, to which Thornton responded "yes." *Id.* Thornton also informed the detective that he was responsible for the apartment until Appellant returned. Detective Knox requested permission to search of the apartment for Shields. Thornton consented and allowed the officers into Appellant's home. *Id.*

While in the home searching for Shields, the officers observed what they believed to be heroin in plastic baggies sitting in plain view on a shelving unit. *Id.* at 3. The officers also found two scales, one of which had white residue on it. The suspected heroin and scales were seized and tested for the presence of narcotics. The tests yielded positive results. Based on this information, a search warrant was obtained and

executed on the apartment. The search resulted in the seizure of cocaine, more heroin, a handgun, and paraphernalia typically associated with the packaging of illegal drugs. *Id.*

The majority states that "[t]he totality of the circumstances in each case controls whether police have a reasonable belief the person consenting to the search has apparent authority to do so." Majority Opinion at 635. However, the majority relies not on the totality of the facts, but rather only on two of them: (1) Thornton was inside the apartment; and (2) Thornton told the police that he was in control of the apartment. *Id.* The majority seemingly ignores the remainder of the facts, each of which militates against their conclusion.

First, the officers knew that the apartment was Appellant's residence. When the officers arrived, Appellant was not there. However, they were told by Thornton that "he would be back shortly." N.T. Suppression Hearing, 6/30/04 at 62. Next, they learned that Thornton was not a permanent resident, but an individual who arrived the day before from Tennessee. Reasonable minds would not disagree that, with just these facts, Thornton lacked the authority to consent to police entry into Appellant's home. This is quite different from the facts in *Rodriguez* where the person admitting the police officers into the home referred to it as "our" home and used her own key to admit the police into the property.

Nonetheless, the police, however, did not end their inquiry. They proceeded to ask whether Thornton was in control of the apartment. Thornton stated that he was. The police officers, apparently ignoring what would clearly be a reasonable judgment that Thornton lacked the requisite authority, chose to believe Thornton's bare statement that he was in control. They conducted no further inquiry as to the extent of his control, or whether he possessed that control at all. They simply chose to disregard what was obvious, and take the word of Thornton, a man who arrived at the home less then twenty-four hours prior to the police themselves. These officers did not act reasonably. Even if it could be demonstrated that Thornton was "in charge" of the apartment, I would nonetheless conclude that the officers' judgment was

unreasonable here. There is a material distinction between being in charge of a residence and having the authority to consent to a police search of it. Being in charge of a residence may constitute nothing more than having the responsibility to answer the phone, take out the garbage, make sure the door is locked, and ensure that the oven is turned off. In fact, there are numerous examples of people that would be considered in charge of a residence including baby sitters, nannies, house-sitters, and house cleaning personnel, who would be responsible for the above duties, but not necessarily vested with the further authority to grant police entry into their employers' homes. Consistent with the facts in the instant case, I am assuming that the person answering the door would identify their role to the officer. The expectation of privacy at issue here belongs to the homeowner, not any of the above individuals. Without more, it is unreasonable to believe that this type of individual is clothed with the apparent authority to consent to a breach of that expectation by state officials. Certainly, a bare statement by any of these individuals that, while they are occupying the residence, they are in charge should not end the inquiry as to whether they possess the authority to consent to police entry into the dwelling. Having the authority to consent to a police search constitutes an entirely different responsibility. Indeed, it seems unlikely that an individual would leave his residence in the control of another, where that person's authority included permitting the police to pierce the sanctity and privacy of the home. This may be because it was never contemplated between the parties. I believe that it would be unreasonable to assert that when people leave their homes, they anticipate, or consent to, governmental authorities entering and seeing what the homeowner expects to be kept private. Without a more concrete basis to conclude that this authority was transferred to Thornton in this case, it is unreasonable to believe that this individual from Tennessee, having had only arrived the day before, possessed even the apparent authority to consent to police entry.

To be clear, I am not suggesting that a babysitter or houseguest, or other temporary resident responding to a

police request to enter the home can never lead to a reasonable conclusion that that person had the "apparent authority" to make that decision. Nor do I suggest that actual authority must have been delegated to these individuals for the police conclusion to be reasonable. However, where an individual who the police *know* is not the owner or permanent resident of the home answers the door, and asserts only that he or she is "in charge," I would find that more investigation is required and additional information is needed before a reasonable conclusion can be reached as to the individual's "apparent authority."

For these reasons, I dissent.

Justice BAER joins this dissenting opinion.