J-E03008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LOUIS RICHARD GRIMES, JR. | : | |
| | : | |
| Appellant | : | No. 1194 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 6, 2020
In the Court of Common Pleas of York County Criminal Division at No:
CP-67-CR-0001166-2019

BEFORE:  PANELLA, P.J.; BENDER, P.J.E.; BOWES, J.; OLSON, J.; STABILE, J.; KUNSELMAN, J.; NICHOLS, J.; KING, J.; and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED MARCH 07, 2022**

Louis Richard Grimes, Jr. appeals from a judgment of sentence imposing 7.5 to 15 years' incarceration, following convictions of persons not to possess a firearm, discharging a firearm into an occupied structure, recklessly endangering three people, and criminal mischief.[1]  Grimes believes the police unconstitutionally searched his property.  We affirm.

## I.      Factual & Procedural Background

The trial court summarized the pertinent facts of this case as follows:

> On January 12, 2019, Officer Benjamin Smith of the York City Police Department received a [911] call from Sapia DeShields reporting that [Grimes], her live-in boyfriend, threatened her children and fired shots into her home while he was heavily intoxicated.  She provided a nearby address where [Grimes] might be located — the home of Camille Sipe, [Grime's] ex-girlfriend and mother of two of his children.  Officers proceeded to that location, where they

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 2707.1(a), 2705, & 3304(a)(5).

observed [Grimes] exiting the residence. [He] was then taken into custody. After obtaining consent to search the home from the 25-year-old son of Ms. Sipe [*i.e.*, Denzell Sipe], officers searched the home and found discarded pants matching a description given to police by Ms. DeShields and a shell casing. During the search, Ms. Sipe arrived home, and officers asked for her assistance in opening a locked safe located in her bedroom closet. Ms. Sipe told Officer Smith that she forgot the exact numbers, but she knew the combination was a ZIP Code in the Bronx. This information enabled the officers to open the safe, in which they found a 9mm pistol.

Trial Court 1925(a) Opinion, 11/17/20, at 1-2.[2]

The police charged Grimes with the crimes mentioned above, and he moved to suppress the evidence seized during the search of the home and the safe. Ms. Sipe testified for the defense, and then Officer Smith testified for the Commonwealth.

At the conclusion of the hearing, both parties argued their positions to the suppression court, and it ruled from the bench that Grimes's motion was denied in all respects. **See** N.T., 10/3/19, at 70-71. Thus, there is no opinion from the suppression court setting forth its findings of fact and conclusions of law.[3] Even so, we ascertain the suppression court's legal analysis for denying

---

[2] We note that the trial judge who authored the 1925(a) Opinion did not preside over the suppression hearing.

[3] This shortcoming by the suppression court violated Pa.R.Cirm.P. 581(I). **See Commonwealth v. Millner**, 888 A.2d 680, 688-89 (Pa. 2005) (observing that suppression judges too often fail to comply with Rule 581(I), and that failure is then belatedly accounted for much later in the appellate process). Because Grimes did not object to this procedural error by the suppression court, we need not consider it further.

suppression from the discussion that the court had with the attorneys during the oral argument at the close of the hearing. *See* N.T., 10/3/19, at 49-74.

Of particular importance to this appeal, the court said to the defense attorney, "You're glossing over the consent that was obtained [from Denzell] . . . All I'm trying to flesh out here is, if there's another person who could also give valid consent to search and that is obtained, what's wrong with that?" *Id.* at 70.

The attorney responded, "Maybe for the house, but most certainly not a safe that has been put [in Ms. Sipe's closet]. Ms. Sipe does not know what's inside of [that safe], and we don't know about Denzell, [his consent is] not part of this." *Id.*

The suppression court then rejected the defense's theory that Ms. Sipe consented to the search of the safe, instead of Denzell. The court explained:

> Even if [Grimes had a privacy expectation inside the Sipes's home], I don't believe that the fact that one of at least two adults, who lived in that premises and had lived there for an extended period of time, both have to give their consent to search. I think the consent of one [*i.e.*, Denzell] is sufficient, and I also believe that the fact that [Ms. Sipe] has indicated that [she did not] give consent, that does not preclude somebody else from giving consent. I don't believe [Officer Smith] is required to obtain the consent from everybody living - - everybody who has the ability to give consent before the search is valid.
>
> So, I'm not going to suppress the evidence seized.

*Id.* at 70-71.

Hence, the suppression court impliedly concluded that the scope of Denzell's consent extended to Grimes's safe. As a result, the court never reached the next step of the defense's constitutional argument – *i.e.*, that the police coerced Ms. Sipe into consenting to the search of the safe by failing to disclose that they did not have a warrant.

At trial, a jury convicted Grimes. Thereafter, the court sentenced him as stated above. This timely appeal followed.

Initially, a divided panel of this Court partially affirmed and partially reversed the order denying suppression. The Commonwealth sought *en banc* reargument. We granted its request and withdrew the panel's decisions.

## II. Analysis

Grimes raises the one issue: "Did the [suppression] court err in denying [his] motion to suppress the fruits of the warrantless searches of [Ms.] Sipe's home and a safe in her closet . . . ?" Grimes's Substituted Brief at 4. His argument has two parts. Frist, Grimes claims the search of the home was improper. In his view, Denzell lacked the actual or apparent authority to consent to a search of the home. Second, Grimes claims the separate search of the safe was improper. He argues that Ms. Sipe's consent to search the safe was involuntary. We address each theory in turn.

## A. *Denzell's Apparent Authority to Consent to the Home Search.*

We begin with Grimes's assertion that Denzell could not consent to the search of the home.

Our scope and standard of review for orders denying suppression are well-settled. "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010). If the evidence of record supports the factual findings of the suppression court, those findings bind us, "and [we] may reverse only if the court's legal conclusions are erroneous." **Id.** We review legal conclusions *de novo*. **See id.**

The Fourth Amendment to the Constitution of the United States provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Pursuant to that Amendment, "searches and seizures without a warrant are presumptively unreasonable, subject only to specifically established exceptions." **Commonwealth v. Wilmer**, 194 A.3d 564, 567-568 (Pa. 2018) (quotations and citations omitted).

"One exception to the warrant requirement is a consent search." **Commonwealth v. Hawkins**, 257 A.3d 1, 9 (Pa. Super. 2020), *reargument denied* (Feb. 11, 2021), *appeal denied*, 259 A.3d 883 (Pa. 2021).

A person has authority to consent to a search if he or she "possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." **Commonwealth v. Basking**, 970 A.2d

1181, 1188 (Pa. Super. 2009) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Common authority is based on "mutual use of the property by persons generally having joint access or control for most purposes." *Commonwealth v. Perel*, 107 A.3d 185, 191 (Pa. Super. 2014) (citation omitted). Finally, "a family member has the common authority to permit a search of the family home unless one family member has manifested and exhibited an intent to exclude others from certain areas of the home." *Commonwealth v. Gibbons*, 549 A.2d 1296, 1301 (Pa. Super. 1988).

Under the apparent-authority doctrine, an individual's consent to a search is valid even if he or she does not have actual authority. The doctrine applies if officers reasonably believe, based on the totality of the circumstances, that the individual had authority to consent. *See, e.g., Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007). "[T]he apparent-authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises." *Id.*

Grimes contends Ms. Sipe had superior authority over the home, that she was "in charge" of it, and that Denzell was subject to her "rules." N.T., 10/3/19, at 17-18, 21. In other words, he claims Denzell lacked authority to consent to the search of the home.

Here, it is uncontradicted that Denzell lacked actual authority to consent to the search. Ms. Sipe testified to her superior authority over the home, and

this was not contested. Thus, we accept that she expressly instructed Denzell to reject the officers' request to search the home. ***See Gibbons***, ***supra***. As a result, Denzell lacked authority in fact.

However, this determination does not end our analysis. Officer Smith and Ms. Sipe disagreed over whether Officer Smith heard her objection to the search and whether he agreed to get a search warrant. While Ms. Sipe testified that she alone was in charge of her home, she never told that to Officer Smith, nor did she tell him any other "rules" for Denzell while he lived in the home. Ms. Sipe only told ***Denzell*** not to allow the officers to search the premises, and she told the officers to meet her at the home with a search warrant. For purposes of our review, we must accept Officer Smith's testimony that he was not able to hear Ms. Sipe's objections to the search on the phone calls. ***See Jones***, ***supra***. This lack of communication left open the possibility for Officer Smith to believe that another adult residing in the home had apparent, co-equal authority to consent to the search. In addition, Denzell never informed the officers that his mother directed him to exclude them from the home.

Instead, Denzell presented the police with the appearance that he had authority to consent to the search. Denzell was 25 years old at the time and resided there fulltime. Furthermore, he had access to every room, and he answered the front door both times that the officers knocked. Denzell led

them through the premises when they asked to sweep the home for other occupants, which manifested a strong appearance of authority over the home.

Thus, police reasonably inferred from Denzell's words and deeds that he shared residential authority with Ms. Sipe, even if she withheld such authority from Denzell in reality. As such, the initial search of the home was reasonable under the totality of the circumstances; the police seized the pants and shell casing in conformity with the Fourth Amendment.

Grimes's first appellate argument is meritless.

### B. Grimes Failed to Challenge the Scope of Denzell's Consent.

Next, Grimes argues that the search of the safe was improper. He believes the safe and its contents were fruits of the unlawful search of the home[4] and that Ms. Sipe's consent to opening the safe was involuntary.

Critically, the suppression court did not rely upon Ms. Sipe's consent to reach its decision. In fact, it did not find that she consented at all, whether voluntarily or otherwise. Rather, the court held that ***Denzell's*** consent to search the home extended to all containers therein, including the safe.

On appeal, Grimes never challenged the search of the safe based on the suppression court's conclusion that Denzell lawfully consented to it. Thus, that ruling is now a final determination that binds this Court. Accordingly,

---

[4] Because the search of the home was lawful, this claim fails.

Grimes's alternate theory regarding the nature of Ms. Sipe's consent is moot, because it cannot afford him appellate relief, even if he is correct.

We recognize that the panel of this Court addressed the suppression court's conclusion that Denzell's consent extended to Grimes's safe. The panel found that the suppression court erred in this regard. **See Commonwealth v. Grimes**, 1194 MDA 2020, Slip Opinion at 18-19 n.13 (Pa. Super. 2021) (unpublished, withdrawn). By addressing an unraised issue, however, the panel itself erred. The panel should not have addressed the issue of Denzell's consent or the issue that Grimes has raised regarding Ms. Sipe's consent.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

The scope of Denzell's consent is not an issue we can address in this direct appeal. Grimes did not raise it in either his 1925(b) Statement or his appellate brief. Aside from subject-matter jurisdiction and the legality of a sentence, this Court may only review the specific issues that an appellant properly preservers, raises, and argues.

"Any issue not raised in a 1925(b) Statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). **See also** Pa.R.A.P. 1925(b)(4)(vii). Additionally, the appellant's brief must contain a Statement of Questions Involved, which shall "state concisely the issues to be resolved . . . No question will be considered unless it is stated in the Statement of

Questions Involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Hence, this Court has long adhered to principle of judicial restraint that we "will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007).

The panel ignored this precept by raising, *sua sponte*, and then deciding the issue of whether Denzell's consent to search the home extended to the safe. As stated, Grimes did not challenge whether the suppression erred in this regard; he only challenged the voluntariness of Ms. Sipe's consent to search the safe.

Even if the suppression court erred when it extended Denzell's consent to search the home to include the safe as well, Grimes waived that error by failing to challenge it on appeal. Accordingly, whether Ms. Sipe voluntarily consented to the search of the safe is irrelevant. The suppression court never found that she consented to any search.

The decision that Denzell properly authorized the police to search the safe is now a final, non-appealed adjudication. As such, whether Ms. Sipe *also* voluntarily consented to a search of that safe is moot.

Judgment of sentence affirmed.

President Judge Panella, President Judge Emeritus Bender, and Judges King and McCaffery join this Memorandum. Judges Bowes, Olson, Stabile and Nichols concur in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/7/2022