J-A09020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
CLINTON DESHAUN BURNS　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　Appellant　　　　　　　:　　No. 608 MDA 2022

Appeal from the PCRA Order Entered March 9, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0006181-2019

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:　　　　　　　**FILED: AUGUST 25, 2023**

Appellant, Clinton Burns, appeals from an order entered on March 9, 2022 in the Criminal Division of the Court of Common Pleas of Dauphin County that denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We previously summarized the historical and procedural facts of this case as follows.

> This case arose out of an incident [wherein Appellant threatened his roommate, Kathleen Carabello (Carabello), with a firearm]. The two were [] living in a house located [along] North [Sixth] Street in Harrisburg[, Pennsylvania]. Carabello did not know [Appellant] before moving into the house a week before the incident.
>
> On the night of October 15, 2018, Carabello's friend, Carly Twyman (Twyman), was staying at the house and planned to move in when she found a job. While the two were in the kitchen, [Appellant] returned to the house and told Carabello that he did not want her living in the house anymore. After [Appellant] left,

Twyman reached into a Little Debbie snack box on top of the refrigerator and felt a handgun inside. Carabello told Twyman to leave the handgun in the box. The two then decided to go to bed early, with both going to separate bedrooms and locking their doors.

After falling asleep, Carabello woke up to the sound of [Appellant] yelling. According to [Carabello, Appellant] yelled, "I want everybody to get the f___ out of my house," and "I'ma shoot everybody in this f_____ house." [Appellant] then started banging on the bedroom doors and tried to open the door to Carabello's room. Carabello unlocked her door and opened it, hoping to calm [Appellant down]. When she opened the door, Carabello saw [Appellant] facing her while holding up a handgun. [Appellant] repeated that he wanted everybody out. Carabello responded that she and Twyman would get a hotel room and move out the next day. After Carabello said this, [Appellant] said, "Okay, I want everybody out of my f_____ house because I'll shoot everybody in this house."

Carabello went back to her room and texted Twyman about leaving and going to the police. Carabello then walked out of her bedroom and waited for Twyman. After Twyman came out of her room, the two walked out of the house. After leaving, Carabello and Twyman called a cab and went to the police station. There, the two spoke to Officer Jacobbi Harper (Officer Harper). Carabello told [Officer Harper] that [Appellant] threatened her with a gun. She also gave Officer Harper a key to the house.

Along with several other officers, Officer Harper went to [Appellant's] house. After opening the front door, Officer Harper called out for [Appellant] to come down to the door. Several minutes passed before [Appellant] came down from the kitchen area and was taken into custody. Once [Appellant] was detained, the officers entered [Appellant's home] and did a protective sweep of the house. Inside the kitchen, the officers found a Ruger 9mm handgun on the refrigerator. After photographing the handgun, the officers secured it and discovered that it was loaded. Inside the living room, meanwhile, the officers found a bag of marijuana.

At the time of the incident, [Appellant] was on federal probation and disqualified from possessing a firearm. Additionally, the police ran a check on the Ruger 9mm and found out that it was listed as stolen. As a result, [Appellant] was charged by criminal

complaint with (1) persons not to possess firearms [(18 Pa.C.S.A. § 6105)]; (2) receiving stolen property (RSP) [(18 Pa.C.S.A. § 3925)]; (3) terroristic threats [(18 Pa.C.S.A. § 2706)]; (4) simple assault [(18 Pa.C.S.A. § 2701)]; (5) possession of a small amount of marijuana [(35 P.S. § 780-113(a)(31))]; and (6) possession of drug paraphernalia [(35 P.S. § 780-113(a)(32))].

After the Commonwealth dismissed the RSP charge, [Appellant] proceeded to a bifurcated jury trial on the remaining [offenses] in October 2020. At the end of trial, the jury found [Appellant] guilty of persons not to possess firearms and terroristic threats.[FN] At sentencing on December 14, 2020, the trial court imposed an aggregate [term of eight] to 16 years' imprisonment comprised of 90 to 180 months for the firearms offense and a consecutive [six] to 12 months for terroristic threats.

[Appellant] filed a timely post-sentence motion for a new trial asserting that the jury's verdict was against the weight of the evidence. The trial court denied [Appellant's] motion without hearing. [Thereafter, Appellant] filed a timely notice of appeal[.]

---

[FN] The jury found [Appellant] not guilty of simple assault and possession of drug paraphernalia. Based on the latter [determination], the trial court found [Appellant] not guilty of the summary marijuana charge.

***Commonwealth v. Burns***, 2021 WL 3629964, at * 1-2 (Pa. Super. 2021)

(footnote in original).

On August 17, 2021, this Court affirmed Appellant's judgment of sentence.[1] ***See id***. Appellant did not petition for allowance of appeal before our Supreme Court.

---

[1] Direct appeal counsel submitted a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), together with a motion to withdraw from representation. Both submissions alleged that the claims presented on direct appeal were wholly frivolous.

Appellant filed a petition for collateral relief pursuant to the PCRA on September 2, 2021.[2] On September 8, 2021, the court appointed counsel,

_____

[2] Since Appellant did not petition for allowance of appeal before our Supreme Court, his judgment of sentence became final on September 16, 2021, 30 days after this Court affirmed his conviction and punishment. *See* 42 Pa.C.S.A. § 9545(b)(3) ("For purposes of [the PCRA], a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Because Appellant's September 2, 2021 submission was filed before his judgment of sentence became final, his PCRA petition was premature. *See Commonwealth v. Smith,* 244 A.3d 13, 17 (Pa. Super. 2020) (PCRA petition filed before judgment of sentence becomes final is a premature petition); *see also Commonwealth v. Neisser*, 2020 WL 603614, *2 (Pa. Super. 2020) (unpublished memorandum) (putative PCRA petition was premature where filing date was 26 days after resentencing and, therefore, before judgment of sentence became final, before expiration of time to file direct appeal, and before actual commencement of one-year PCRA limitations period). In prior cases, we have said that a premature PCRA petition constitutes a legal nullity, that the PCRA court lacks authority to consider such a filing, and that a premature submission should be dismissed without prejudice towards a petitioner's right to refile once the judgment of sentence becomes final. *See Neisser*, 2020 WL 603614, at *3 (PCRA petition may only be filed after judgment of sentence becomes final and premature submissions should be dismissed without prejudice to resubmission once the PCRA's one-year filing period has commenced); *Commonwealth v Williams*, 215 A.3d 1019, 1023 (Pa. Super. 2019); *Commonwealth v. Leslie*, 757 A.2d at 985-86 (where petitioner filed *pro se* PCRA petition shortly before he filed a direct appeal to this Court, "the trial court should have dismissed the PCRA petition without prejudice as premature"); *see also Commonwealth v. Kubis*, 808 A.2d 196, 198 n.4 (Pa. Super. 2002) ("The PCRA provides petitioners with a means of collateral review but has no applicability until the judgment of sentence becomes final."). Appeals from orders disposing of premature PCRA petitions are subject to quashal. *See Neisser*, 2020 WL 603614, at *2; *Commonwealth v. Seay*, 814 A.2d 1240, 1241 (Pa. Super. 2003) (premature PCRA petition must be quashed).

Although we have held that appellate challenges to orders disposing of premature PCRA petitions are subject to quashal, other decisions by this Court
*(Footnote Continued Next Page)*

who filed an amended petition on December 7, 2021. Thereafter, the PCRA court convened a hearing on February 25, 2022. Appellant's petition was denied by opinion and order issued on March 9, 2022. Appellant filed a timely notice of appeal on April 5, 2022 and timely, court-ordered Pa.R.A.P. 1925(b) concise statement on May 19, 2022. The court relied on its March 9, 2022 opinion as its explanation for denying relief.

Appellant asks us to review the following question on appeal.

> Whether the PCRA court erred and trial counsel was prejudicially ineffective by failing to file a motion to suppress requiring a reversal of the PCRA court's decision?

Appellant's Brief at 3 (extraneous capitalization omitted).

Appellant alleges that trial counsel was ineffective in failing to file a motion to suppress a firearm and a small amount of marijuana recovered from his residence following his arrest. When analyzing such claims, we start with the presumption that counsel was effective. *See Commonwealth v. Spotz*,

---

have concluded that it would be unjust to declare a premature PCRA petition to be a legal nullity where procedural missteps surrounding the misapprehension of the validity of a petitioner's initial filing are directly attributable to PCRA court error. *See Commonwealth v. Mojica*, 242 A.3d 949, 954 (Pa. Super. 2020), *appeal denied*, 252 A.3d 595 (Pa. 2021). In this case, the PCRA court improperly accepted Appellant's premature *pro se* petition, appointed counsel, permitted amendment of the initial petition, and convened a hearing. Moreover, at this juncture, the one-year filing period under the PCRA has expired. We shall therefore refrain from quashal and caution the PCRA court to review more carefully the timeliness of future petitions to ensure they are filed "within one year of the date that the judgment **becomes final**" and not before that critical milestone. 42 Pa.C.S.A. § 9545(b)(1) (emphasis added).

- 5 -

18 A.3d 244, 259-260 (Pa. 2011). A PCRA petitioner bears the burden of proving ineffectiveness. **See Commonwealth v. Ligons**, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Id.**

"A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." **Id.** To establish the absence of a reasonable basis for counsel's action or inaction, the petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Spotz**, 18 A.3d at 260, *quoting* **Commonwealth v. Williams**, 899 A.2d 1060, 1064 (Pa. 2006). Prejudice is proven if the petitioner "show[s] that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." **Id.**

To support his claim that trial counsel was ineffective, Appellant asserts that the PCRA court erred in finding that Carabello possessed apparent authority to consent to a search of the North Sixth Street residence. Without contesting Carabello's status as a lodger in the home, Appellant argues that she planned to leave the residence the day after the incident at issue and,

therefore, she possessed no tangible interest that would permit her to consent to a search. *See* Appellant's Brief at 13. Appellant asserts that counsel had no reason to forgo suppression since there was no downside to pursuing the motion. *See id*. at 16. Lastly, Appellant maintains that he suffered prejudice due to counsel's inaction since there was a reasonable likelihood of a more favorable disposition of his charges if his suppression claims had succeeded.[3] *See id*. at 19.

The following principles govern our assessment of whether Carabello gave valid consent to search the North Sixth Street residence.

> The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *Fernandez v. California*, 571 U.S. 292, 298 (2014); *Commonwealth v.*

---

[3] Appellant also claims there was no basis to conduct a warrantless search of his residence since "there was no specific information received about [other] 'victims.'" Appellant's Brief at 13 and 19 ("There is a complete absence of any evidence or testimony concerning "crime victims" other that [Carabello]. Indeed, it is not entirely clear that anyone other than [Appellant] was residing at the residence searched."). We need not devote extensive analysis to this contention. First, the PCRA court declined to address the issue of exigent circumstances given its conclusion that the plain view doctrine allowed the police to seize a firearm and marijuana from Appellant's residence after they initiated a consensual search. *See* Trial Court Opinion, 3/9/22, at 4 n.5 (not paginated). Second, Carabello testified at trial that, on the night in question, she observed Appellant holding a firearm and threatening to shoot "everybody" who did not vacate his residence. *See Burns*, 2021 WL 3629964, at * 1-2. Hence, contrary to Appellant's broad and unsubstantiated assertions, the record reveals reasonably compelling grounds to invoke exigent circumstances as an exception to the warrant requirement. *See Commonwealth v. Gray*, 211 A.3d 1253, 1260-1261 (Pa. Super. 2019) (noting that exigent circumstances may overcome the strong preference for a warrant if, in balancing several factors, the Commonwealth can establish an urgent need for immediate action in response to the presence of an armed suspect who has threatened harm to persons inside a dwelling).

> *Strader*, 931 A.2d 630, 634 (Pa. 2007). Warrantless entry by law enforcement into a home to look for a suspect is presumptively unreasonable and is constitutionally impermissible absent an applicable exception to the Fourth Amendment's general requirement that a warrant be obtained. *Payton v. New York*, 445 U.S. 573, 586-603 (1980); *Strader*, 931 A.2d at 634; *Commonwealth v. Hawkins*, 257 A.3d 1, 9 (Pa. Super. 2020); *Commonwealth v. Berkheimer*, 57 A.3d 171, 179 (Pa. Super. 2012) (*en banc*). "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Payton*, 445 U.S. at 587, *quoting* *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970).

*Commonwealth v. Lehnerd*, 273 A.3d 586, 589-591 (Pa. Super. 2022).

While warrantless searches unsupported by probable cause are generally deemed to be unreasonable, Pennsylvania courts recognize an exception when a third party consents to the search:

> Both the federal and Pennsylvania constitutions permit third-party consent to a search. When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause. The [Pennsylvania] Supreme Court explained that a third party possessing common authority over a premises can give valid consent to search against a non-consenting person who shares authority because it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Commonwealth v. Simmen*, 58 A.3d 811, 816-817 (Pa. Super. 2012) (citations and internal quotations omitted).

As the foregoing principles make clear, the constitution permits warrantless entry and search of a home where an occupant with **actual** common authority over the premises consents to police entry and an ensuing search. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Commonwealth*

*v. Hawkins*, 257 A.3d 1, 9-10 n.6 (Pa. Super. 2020); *Commonwealth v. Basking*, 970 A.2d 1181, 1188 (Pa. Super. 2009).  In the absence of actual authority, apparent authority may justify a warrantless entry and search if the facts known to the law enforcement objectively establish that a reasonable person would conclude that the consenting party possessed authority to allow others to enter the premises.  *Rodriguez*, 497 U.S. at 186-189; *Strader*, 931 A.2d at 634; *Basking*, 970 A.2d at 1190-1191.  An officer's knowledge of facts which negate the consenting party's claim of actual authority over the premises will defeat an assertion of apparent authority and render the warrantless entry a violation of the Fourth Amendment.[4]  *Rodriguez*, 497

_____

[4] "Consent to search a container or a place is effective only when given by one with 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'"  *United States v. Karo*, 468 U.S. 705, 725 (1984) (O'Connor, J., concurring), *citing* *United States v. Matlock*, 415 U.S. 164, 171 (1974).  Common authority, whether actual or apparent, "turns on the mutual use of the property (or container) by persons generally having joint access or control for most purposes."  *Id.* at 171, n.7.  Actual common authority to give valid consent is established where the consenting party, in fact, enjoys mutual use of, joint access to, or control of the premises or item that is subject to a search.  *See Commonwealth v. Perel*, 107 A.3d 185, 192 (Pa. Super. 2014), *appeal denied*, 107 A.3d 185 (Pa. 2015).  Third-party consent predicated on apparent authority is valid only when the police reasonably believe the third party has actual authority to consent (when, in fact, they do not).  *See Perel*, 107 A.3d at 192, *quoting* *Strader*, 931 A.2d at 634.  In particular, the apparent authority exception applies when the facts available to police at the time of the search would cause a person of ordinary caution to believe the consenting third party had actual common authority over the premises or container.  *Strader*, 931 A.2d at 634.  If the consenting party lacks actual authority, "the mistake is [nevertheless] constitutionally excusable if the police reasonably believed the consenter had such authority
*(Footnote Continued Next Page)*

U.S. at 188-189; **Basking**, 970 A.2d at 1191. The apparent authority exception turns on whether, given the available facts, a person of reasonable caution would believe the third party has authority over the premises. **Id**. The determination of apparent authority must be based on the totality of the circumstances, and if it is ambiguous whether the third party has apparent authority, "a police officer should make further inquiries to determine the status of the consenting party." **Commonwealth v. Blair**, 575 A.2d 593, 598 (Pa. Super. 1990). Courts have found apparent authority where the consenting party identifies the dwelling as her residence, possesses a key to the dwelling, and the police have no knowledge that she does not live there. **See Rodriguez**, 497 U.S. at 179-180 (individual who consented to search of apartment referred to defendant's apartment as "our" apartment, had a key to the apartment, accompanied the police to the apartment, and let them in with her key).

The facts known to Officer Harper at the time of the search supplied him with reasonable grounds to believe that Carabello had actual authority to

_____

and police acted on facts leading sensibly to their conclusions of probability. **Strader**, 931 A.2d at 634.

In a typical case, a fellow lodger or roommate would enjoy actual authority over his or her living quarters, together with the common areas of the premises, such as the kitchen, living room, or a shared bathroom. By convention, the fellow lodger would not ordinarily enjoy actual authority over a roommate's segregated living quarters unless the lodger enjoyed mutual use of, joint access to, or control of the separate quarters or unless such authority was expressly conveyed.

consent to a search of her living quarters and the common areas of the North Sixth Street residence, including the kitchen and the living room. Appellant does not dispute that, at the time of the search, he shared his residence with Carabello. Moreover, Carabello gave Officer Harper a key to the home after she explained that Appellant threatened her with a firearm. Although the record does not show that Carabello gave Officer Harper the key for the express purpose of facilitating a search, few facts more clearly and compellingly communicate consent to search a home than the conveyance of a key to an investigating officer to whom a serious crime has been reported. We therefore conclude that Carabello gave valid consent to Officer Harper.

Having determined that Carabello validly consented to a search at the North Sixth Street residence, we turn now to consider whether the firearm recovered from the top of a kitchen refrigerator, and a bag of marijuana recovered from the living room, were subject to seizure pursuant to the plain view doctrine.

> The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and, (3) the officer has a lawful right of access to the object. **See Commonwealth v. Collins**, 950 A.2d 1041, 1045 (Pa. Super. 2008) (*en banc*), [*citing* **Commonwealth v. McCree**, 924 A.2d 621, 627 (Pa. 2007)].
>
> "There can be no reasonable expectation of privacy in an object that is in plain view." **Commonwealth v. Bumbarger**, 231 A.3d 10, 20 (Pa. Super. 2020). "The question [of] whether property in plain view of the police may be seized ... must turn on the legality of the intrusion that enables them to perceive and physically seize

- 11 -

the property in question." ***Texas v. Brown***, 460 U.S. 730, 737 (1983)[.]

> In determining whether the incriminating nature of an object is immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause.

***Commonwealth v. Johnson***, 921 A.2d 1221, 1223 (Pa. Super. 2007) (citations, brackets and quotation marks omitted).

When reviewing whether an object's criminal nature is "immediately apparent," we note that probable cause

> merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

***Commonwealth v. Smith***, 285 A.3d 328 (Pa. Super. 2022), *citing*

***Commonwealth v. McEnany***, 667 A.2d 1143, 1148 (Pa. Super. 1995)

(citations, emphasis, and quotation marks omitted).

After careful review of the certified record, we are satisfied that the Commonwealth has met each of the requirements for application of the plain view doctrine. As we concluded above, Officer Harper and other law enforcement officers entered the North Sixth Street residence with valid consent from Carabello to conduct a search of the common areas. As such, they were lawfully present in both the kitchen and living room of the home. While present in these locations, the officers observed marijuana in the living

room and a firearm atop the refrigerator in the kitchen. The presence of the firearm confirmed Carabello's observations and corroborated her statement that Appellant threatened her with a gun. In addition, the incriminating nature of the marijuana was immediately apparent to the investigating officers. In short, the officers observed both incriminating objects in plain view from lawful vantage points and had a lawful right of access to the common areas of Appellant's home where contraband was openly stored. Because all three prongs of the plain view doctrine were satisfied, the seizure of the gun and the marijuana was constitutionally permissible, and the PCRA court correctly denied Appellant's petition for collateral relief.[5]

Order affirmed.

---

[5] Citing provisions of our Rules of Criminal Procedure which prescribe the manner by which criminal charges are to be instituted, Appellant makes a passing observation that he was charged with a misdemeanor and his case should have been instituted *via* summons and not an arrest. **See** Appellant's Brief at 21. The immediate relevance of this contention to the matters raised in this appeal is unclear. As the PCRA court pointed out, Appellant offered no evidence or testimony to show that he was arrested for a misdemeanor and not a felony. **See** Trial Court Opinion, 3/9/22, at 6 (not paginated). Moreover, the claim Appellant presents on appeal alleges that trial counsel was ineffective in failing pursue a suppression claim. Appellant has not come forward with a claim challenging trial counsel's stewardship in failing to seek quashal of his charges because they were improperly instituted. Lastly, Appellant does not argue that the police lacked probable cause to effectuate his arrest or that items seized during a search incident to an unlawful arrest must be suppressed. In light of these factors, we decline to address any issue or argument pertaining to the initiation of the charges in this case.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>08/25/2023</u>